## HARRY SWISHER

### *v.*

## THE ILLINOIS CENTRAL RAILROAD COMPANY.

*Opinion filed October 16, 1899—Rehearing denied December 14, 1899.*

1. APPEALS AND ERRORS—*when Supreme Court is precluded from a consideration of the case.* The recital in the judgment of the Appellate Court, reversing without remanding, of ultimate facts covering the entire right of recovery as made by the pleadings in an action for negligence, precludes, under the statute, further consideration of the case by the Supreme Court, in the absence of errors of law.

2. SAME—*when Appellate Court's recital of facts precludes a recovery.* In an action for injuries to a fireman by collision occasioned by a misplaced switch, which, it is alleged, had no light thereon to indicate the way it was turned, a finding by the Appellate Court that the injury was the result of a risk incident to the plaintiff's employment, that it occurred in the day time when lamps were not needed, and that it was occasioned by the negligence of a fellow-servant of the plaintiff, precludes a recovery under such facts.

MAGRUDER, J., dissenting.

*Illinois Central Railroad Co.* v. *Swisher*, 74 Ill. App. 164, affirmed.

APPEAL from the Appellate Court for the Second District;—heard in that court on appeal from the Circuit Court of Lee county; the Hon. JOHN C. GARVER, Judge, presiding.

This is an action by appellant, against appellee, to recover damages for personal injury.

The original declaration was amended, and as amended contained two counts, which, in effect, aver the plaintiff, while in the service of the defendant, was a locomotive fireman, and while he and his engineer were in the exercise of reasonable care and caution he was injured at the station of Sublette on the third day of May, 1892, by a collision between a passenger engine which he was firing, going south, and a switch engine of the defendant heading north and standing on the east side-track at that place. Each count alleges that there were standard or rotary switches at that station, with targets painted white and targets painted red, the former, when facing an approaching engine, indicating the main track was safe, and the latter, when so placed, indicating it was not safe for a train to pass over that track. In each count it is averred that the targets were only for use in the day time, and when completed the switches had lamps on them to be used in the night time, and that the defendant negligently failed to put lamps on them, by reason of which the plaintiff was injured in the night time, when it was dark.

On May 4, 1896, two additional counts were filed, the first of which alleges that it was the duty of the defendant, through its servants, to use reasonable care and diligence to keep the switch in question closed, so the train could pass along the main track without going upon the side-track, but the defendant, through its servants, did not keep said switch closed, and did not, through its servants, exercise reasonable care or diligence to keep the same closed, and that by reason of said negligence of defendant, through its servants, about seven o'clock in the afternoon of May 3, 1892, the Dubuque and LaSalle passenger train, on which plaintiff was a fireman, and while he and his fellow-servants were in the exercise of reasonable care, was diverted from the main track onto the side-

track at the station of Sublette, and collided with the engine of a freight train standing on the side-track, thereby greatly injuring the plaintiff, and that said switch was not permitted to remain open by any of the fellow-servants of the plaintiff.

The second count avers that it was the duty of the defendant, by its servants, to use reasonable care to keep the switch in question closed until the engine and train had passed by it, but that the defendant, by its servants, did not keep said switch closed, and that while said train was being run along said main track approaching said switch, at about seven o'clock in the evening of May 3, 1892, defendant, by its servants, carelessly opened said switch before said locomotive reached it, and negligently, by its servants, permitted it to be and remain open until said engine reached it, and in consequence of said negligence said engine and train were diverted from said main track onto said side-track and came in collision with the engine on the side-track which was there, without fault of the plaintiff or his fellow-servants, and that by reason of said collision the plaintiff was greatly injured without his fault or the fault of any of his fellow-servants, and that the switch was not opened through the fault of the plaintiff or any of his fellow-servants.

On trial in the circuit court of Lee county a verdict and judgment were rendered in favor of the plaintiff, which, on appeal to the Appellate Court for the Second District, were reversed and the cause was not remanded.

The Appellate Court, in its judgment, made a finding of facts, which was recited in the final order of that court, as follows: "And the court finds as facts, from the evidence in the case, that the injury to appellee, under the original declaration as amended, was the result of the risks incident to his employment, and occurred in the day time, when lamps were not required on the switch of the appellant, and the injuries resulting to him by reason of the negligence averred in the additional counts

of the declaration were occasioned by the negligence of a fellow-servant of appellee directly co-operating with him in the particular business in hand and in the same line of employment in which the injuries were sustained."

MORRISON & BETHEA, S. B. POOL, and HENRY S. DIXON, for appellant.

WILLIAM BARGE, H. A. BROOKS, and C. LEROY BROWN, for appellee.

Mr. JUSTICE PHILLIPS delivered the opinion of the court:

By the final order of the Appellate Court for the Second District the ultimate facts found were that the injury was the result of the risks incident to plaintiff's employment; that the accident occurred in the day time, when lamps were not required on the switch of defendant, and that the injury was occasioned by the negligence of a fellow-servant of plaintiff directly co-operating with him and in the same line of employment. These findings are all as to ultimate facts and not as to evidentiary facts, and hence are conclusive on this court. (*Caywood* v. *Farrell*, 175 Ill. 480, and authorities there cited.) The ultimate facts as found by the Appellate Court, covering the entire right of recovery, as averred in the pleadings in this case, having been by the Appellate Court adjudicated adversely to the plaintiff, the appellant here, and being all with reference to facts the determination of which is conclusive of the action, we are precluded by the statute from a further consideration of the case.

The judgment is affirmed.          *Judgment affirmed.*

Mr. JUSTICE MAGRUDER, dissenting:

This is an action on the case, brought by the appellant against the appellee company to recover for injuries received by him on May 3, 1892, at the village of Sublette in Lee county.

The original amended declaration contained two counts. The first count alleged that the plaintiff was injured on said day on account of a collision between a passenger train going south, upon which he was acting as fireman, and a freight train of the appellee company, heading north and standing on the east side-track at the station in the village of Sublette; that the passenger train ran through an open switch; that the target on said switch was prepared for a lamp, but no lamp was furnished by the company, and none was on the switch. The proof tends to show, that the collision occurred about fifteen minutes after seven o'clock in the evening of said day; that it was cloudy and dark at the time; that, if there had been a light on the switch, the engineer on the passenger train could have seen the switch turned in time to stop the train and could have prevented a collision; that the main track and east and west side-tracks at said place and the switches were used both in the day time and in the night time under the directions of the defendant; that the person or persons, whose duty it was to furnish the proper appliances of said switch, and signal lights to place thereon, and the necessary appliances for the ordinary safety of the company's employes, were not fellow-servants of the plaintiff; that the plaintiff had no knowledge of the incomplete condition of the switch or of the neglect of the defendant to place signal lights thereon; that the same were necessary for the safety of the plaintiff and his fellow-servants.

The second count is substantially the same as the first, but does not allege that the injury occurred in the night time; on the contrary, the second count alleges that sufficient light was not afforded by the sun or the moon to see said target, and that there was no artificial light.

Under the issues made upon the two counts above described, the case was first tried before a jury in the circuit court, and resulted in a verdict and judgment in favor of the appellant for $9375.00. Upon appeal to the

Appellate Court this judgment was reversed, and the cause was remanded to the circuit court, as will be seen by reference to the case of *Illinois Central Railroad Co.* v. *Swisher*, 53 Ill. App. 411. After such reversal and remandment the case was tried a second time in the circuit court before the court and a jury, and again resulted in a verdict and judgment in favor of the appellant. A second appeal was taken to the Appellate Court where the second judgment thus rendered was reversed, and the cause was again remanded to the circuit court, as will be seen by reference to the case of *Illinois Central Railroad Co.* v. *Swisher*, 61 Ill. App. 611.

After the second reversal and remandment of the cause to the circuit court two additional counts were filed. The first additional count alleged, that the switch was negligently permitted to be and remain open by the company and its servants, so that the engine and train in consequence of the said negligence, and as a proximate result thereof, were diverted from the main to the side-track on the easterly side of the main track, and came in collision with a locomotive engine and train of cars of the defendant standing on said side-track; that the switch was permitted to be and remain open without the fault of the plaintiff or any of his fellow-servants. The second additional count alleged, that the company, by its servants, carelessly opened said switch before the time when the locomotive was approaching, and by its servants negligently permitted the same to be and remain open, until the engine reached the same, and thereby caused the passenger train, upon which the plaintiff was working as a fireman, to run on to the side-track and collide with the freight train standing there.

Under the issues formed upon the declaration, as thus amended, consisting of the two original counts and of the two additional counts so added as aforesaid, the cause was tried a third time before the court and a jury; and the third trial again resulted in a judgment in favor of

the plaintiff and against the company for $5000.00. The company took an appeal from the third judgment thus rendered to the Appellate Court. On December 17, 1897, the Appellate Court entered a judgment reversing the cause without remanding it. From the judgment thus entered by the Appellate Court, reversing the cause without a remandment thereof, the present appeal is prosecuted to this court.

In the judgment thus entered by the Appellate Court on December 17, 1897, the Appellate Court embodied the following finding of facts, so called, to-wit: "And the court finds, as facts from the evidence in the case, that the injury to appellee (the present appellant) under the original declaration as amended was the result of the risks incident to his employment and occurred in the day time when lamps were not required on the switch of the appellant (the present appellee); and the injuries resulting to him by reason of the negligence averred in the additional counts of the declaration were occasioned by the negligence of a fellow-servant of the appellee (the present appellant) directly co-operating with him in the particular business in hand and in the same line of employment, in which the injuries were sustained."

The facts, which the Appellate Court is required by section 87 of the Practice act to find and incorporate in its judgment, are the ultimate facts upon the existence or non-existence of which, as set up in the pleadings, the rights of the parties depend. Section 87 of the Practice act, which has often been before this court for construction, "does not mean that the Appellate Court shall find what was the evidence of the ultimate facts, or that it shall find those merely subordinate or evidentiary facts which, when established, contribute to the establishment of the ultimate fact which must exist in order to sustain the alleged cause of action." The ultimate facts thus to be found are ordinarily that the plaintiff was or was not in the exercise of ordinary care, and that the defendant was

or was not guilty of negligence. Not only are the facts thus to be found the ultimate facts above referred to, but "where the Appellate Court finds the facts different from the trial court, the facts recited must include every material issue submitted to the trial court to authorize the Appellate Court to render final judgment different from the one below. * * * But a finding upon an immaterial issue, or facts which can have no bearing on the decision of the case, is not required." The recital of the facts by the Appellate Court in its judgment is only authorized by section 87 when its finding, either wholly or in part, of the facts concerning the matter in controversy is different from the finding of the trial court. Where it makes the same finding of facts as the trial court, it must affirm the judgment of the latter court, unless it finds that there is some erroneous ruling upon a question of law. The views thus expressed are sustained by the following decisions: *Hayes* v. *Massachusetts Life Ins. Co.* 125 Ill. 626, and cases there cited; *Hogan* v. *City of Chicago*, 168 id. 551, and cases there cited; *Senger* v. *Town of Harvard*, 147 id. 304.

The finding of facts made by the Appellate Court in this case, as above set forth, does not conform to the rules thus laid down. There is no finding of the ultimate facts, or either of them, as to whether or not the plaintiff was in the exercise of ordinary care when the injury occurred, or as to whether or not the defendant was guilty of such negligence as produced the injury.

The Appellate Court finds "that the injury to appellee (the present appellant) under the original declaration as amended was the result of the risks incident to his employment." This finding, if it be a finding of fact, is consistent with the finding of the court below which resulted in a judgment in favor of the appellant, that is, upon the assumption that the opening of a switch, and the permitting of the same to remain open, and the inability of an engineer to see the switch in time to avoid injury,

are risks incident to the employment of a fireman upon
a passenger train.

In *Chicago and Alton Railroad Co.* v. *House*, 172 Ill. 601,
where a fireman on a passenger train was killed through
the negligence of the crew of another train in leaving
open in the night time a switch which had no light, it
was said (p. 605): "That appellant was in fault with re-
spect to the absence of the light is not denied, but it
is contended that the risk it created was accepted and
assumed by the deceased.   An employe does not assume
all the risks incident to his employment, but only such
as are usual, ordinary, and remain so incident after the
master has taken reasonable care to prevent or remove
them, or, if extraordinary, such as are so obvious, and
expose him to danger so imminent, that an ordinarily
prudent and careful man would anticipate injury as so
probable that in view of it he would not enter upon or
remain in the employment.   *   *   *   'Usual' is defined
as 'common; frequent; ordinary; customary; general;'
and 'ordinary,' as 'common; usual; often recurring.'   It
cannot truly be said that a switch left open when it should
have been closed is an ordinary or usual incident in the
employment of train hands on a railroad, and it is cer-
tain that no degree of light would enable the engineer to
see it open except when it is open.   Here there was no
defect in the switch itself.   Had it been used at all after
it was opened, it would have prevented the accident.
The duty to close it rested upon those who knew how,
were well able, had full opportunity, and every motive
of interest to perform that duty and a settled habit of
performing it."   Again in *Pullman Palace Car Co.* v. *Laack*,
143 Ill. 242, we said: "As a general rule, the servant as-
sumes the natural and ordinary risks of the business in
which he engages."   Still again in *Consolidated Coal Co.* v.
*Haenni*, 146 Ill. 614, we said: "When a servant enters into
a contract of hiring with the master, he assumes all the
risks ordinarily incident to the employment, and is pre-

sumed to have contracted with reference to such risks."
Here, the finding made by the Appellate Court does not
state that the injury was the result of the natural and
ordinary risks incident to the employment of the plaintiff.

It is also well settled, that the servant does not as-
sume the risks incident to his employment, unless such
risks are known to him, or unless the risks are of such
a character that he ought to have known of them. "In
order to imply assent on the part of the servant to the
hazards of the service, the hazards and risks must be
patent, or such as the servant knows or ought to know
of. The servant assumes those risks only incident to his
employment, of which he has express or implied notice.
A servant does not assume the risks of any danger aris-
ing from unsafe or defective methods or surroundings or
instrumentalities, unless he has, or may be presumed to
have, knowledge or notice thereof. He has a right to
assume that the place and appliances furnished him by
his master are safe and suitable for the business in which
he is engaged." (Wood on Master and Servant, sec. 353;
14 Am. & Eng. Ency. of Law, pp. 843, 855; *Whitney & Star-
rette Co.* v. *O'Rourke,* 172 Ill. 177; *Consolidated Coal Co.* v.
*Haenni,* 146 id. 614). In the case at bar, the question was
not whether the injury was the result of the risks in-
cident to the appellant's employment, but whether the
injury was the result of the usual and ordinary risks
incident to such employment, which were known to ap-
pellant, or which the appellant ought to have known of.
The first count of the original amended declaration al-
leges that the appellant "had no knowledge of the in-
complete condition of said switch and switches and the
neglect of the defendant to place signal lights thereon."
Thus, the question as to whether the failure to close the
switch, or the failure to give warning that the switch
was open, was or was not such a risk as the appellant
was bound to take notice of, or to have knowledge of,
was directly made by the pleadings. Therefore, the find-

ing of the Appellate Court omits a material issue which
was submitted to the trial court, and the finding actually
made upon the question of risk is a finding upon an im-
material issue. It could make no difference whether the
injury was the result of risks incident to 'appellant's
employment or not, if such risks were not the usual and
ordinary risks, which under the law he must be held to
have assumed, or if the circumstances were not such as
to charge him with notice or knowledge of such risks.
The Appellate Court finds that the injury "occurred in
the day time when lamps were not required on the switch
of the appellant." The statement is not that lamps were
not required by the rules of the company. The evident
meaning of the finding, therefore, is, that lamps were not
required simply because the injury occurred in the day
time. Webster defines "day time" as "the time between
sunrise and sunsetting." The proof in this case shows,
that the accident occurred at the hour of about fifteen
minutes after seven in the evening. The almanac intro-
duced in evidence showed, that, on May 3, 1892, the sun
set at fifty-seven minutes after six in the evening. It
would appear, therefore, that the injury did not occur in
the day time, if the definition given by Webster is cor-
rect. By the terms, however, of section 87 of the Prac-
tice act, and in view of the construction given to that
act by this court, the finding upon this question of fact
by the Appellate Court must be regarded as conclusive.
It is, nevertheless, true that the finding is immaterial
under the allegations of the second count of the original
amended declaration. That count does not allege that
the injury occurred in the night time, but that "the sun
had then set and sufficient light was not then afforded by
the sun or moon whereby a person on said locomotive
and train * * * could distinguish the said color of
said painted sides of said target and target wings," etc.
The question under this count is, whether there was suf-
ficient light to distinguish the targets on the switch pole,

even though the time was day time instead of night time. The proof tends to show that the weather was cloudy and dark. If the weather was cloudy and dark, it was the duty of the company to see that there was a lamp upon the switch, whether the time when the injury occurred was before sunset or after sunset. The first count presents a case where the injury is alleged to have occurred in the night, and when, therefore, a lamp on the switch was necessary. The second count presents a case, in which the injury is alleged to have occurred when the weather was cloudy and dark so that there was no light from the sun, and when, therefore, a lamp upon the switch was equally necessary. Hence, the adverse finding of the Appellate Court is as to the facts set up in the first count, and not as to the facts set up in the second count. It is "the duty of the Appellate Court to recite in its final judgment its finding in respect of every controverted fact concerning every material issue submitted to the trial court, and material and necessary to the maintenance of its judgment, which it found differently from the trial court. * * * Where there is a recital of the facts controlling some of the issues, and no recital of facts as to other issues, it may be presumed that the Appellate Court found, in respect of the latter, as did the trial court." (*Hawk* v. *Chicago, Burlington and Northern Railroad Co.* 138 Ill. 37). In *Hayes* v. *Massachusetts Life Ins. Co.* 125 Ill. 626, we said (p. 640): "Upon the failure of the Appellate Court to find the facts differently from the trial court upon both causes of action set forth in the declaration, it will be considered that, as to the cause of action whereof there is no finding of facts, the Appellate Court found the facts as did the court below." In such case it is error for the Appellate Court not to affirm the judgment of the circuit court. (Ibid.)

In its finding of facts, as embodied in the judgment, the Appellate Court finds that "the injuries resulting to him (appellant) by reason of the negligence averred in

the additional counts of the declaration were occasioned by the negligence of a fellow-servant of appellee (the present appellant) directly co-operating with him in the particular business in hand and in the same line of employment in which the injuries were sustained."

This is a finding that the injury was occasioned by the negligence of "a fellow-servant of appellant," that is to say, of one fellow-servant of appellant. But there was evidence tending to show, that the injury was the result of the negligence of two servants of the railroad company. Some of the witnesses testified that the switch was opened by one Irwin, who was head brakeman upon the freight train standing upon the side-track. The testimony also tended to show, that it was the duty of the station agent at Sublette to see that all switches were closed before the trains came in. One Jones was the station agent at that point, and was at the platform of the depot looking up the track before the train came in, but did not examine to see whether the switch was closed or not. There is nothing in the finding of the facts made by the Appellate Court to indicate whether the fellow-servant therein referred to was Jones, the station agent, or Irwin, the brakeman upon the freight train.

The rules of the company, as introduced in evidence, provided that "station agents will be held responsible for the position of the switches and cars therein; and in no case will they allow the switches from the main track, without orders from the trainmaster, except when a train has arrived, to enter the side-track. Station agents must know that all switches are in proper position for the passage of trains upon the main track." The testimony also shows, that "the division superintendent appoints station agents; trainmaster employs brakemen and conductors on freight trains." There is no evidence that the appellant, Swisher, and the brakeman, Irwin, knew each other, or ever worked together, or were ever associated together in any way in any kind of work. If, however,

182—35

Irwin and Swisher were fellow-servants, it does not appear that Jones and Swisher were fellow-servants. If Irwin was negligent in leaving the switch open, Jones was negligent in permitting it to remain open and in not examining it to see whether it was open, inasmuch as the proof shows that it was open at least twenty minutes before the passenger train arrived. The duty of the station agent would appear to have been a duty of supervision and inspection. The rule is, that a master's duty of supervision and inspection is one that cannot be delegated, so as to relieve the master of liability. "Whilst a corporation must act through its servants, yet when such servants are entrusted with a duty that belongs to the principal as a primary duty, the negligence of the servant entrusted with that duty is negligence for which the principal is liable." (*Chicago and Eastern Illinois Railroad Co.* v. *Kneirim,* 152 Ill. 458). The servant of the master who is thus entrusted with the duty of supervision and inspection is the direct representative of the master, and not a mere fellow-servant with those whose acts are subject to his supervision and inspection. (*Wenona Coal Co.* v. *Holmquist,* 152 Ill. 581).

It is true that the question, whether or not the servant who has caused an injury and the servant who has received an injury are fellow-servants or not, is a question of fact to be determined by the jury. The definition of a fellow-servant is a question of law, but whether the person claimed to be a fellow-servant comes within the definition is a question of fact for the jury. The verdict of the jury upon the trial below, and the judgment of the trial court based upon that verdict, amount to a finding that the injury was not caused by the negligence of a fellow-servant. The judgment of the Appellate Court reverses the finding thus made by the jury, and substitutes therefor the finding of that court that the injury was caused by a fellow-servant. Such finding, however, made by the Appellate Court, is based upon the definition of

fellow-servant as embodied in the finding of facts made
by the Appellate Court. The Appellate Court says that
the injuries were occasioned by the negligence of a fellow-
servant "directly co-operating with him in the particular
business in hand and in the same line of employment in
which the injuries were sustained." This definition of
fellow-servant omits a qualifying clause which is essen-
tial to make the definition complete. It is a well settled
rule in this State, that, when one servant is injured by the
negligence of another servant, they are fellow-servants
if, at the time of the injury, they are directly co-operating
with each other in the particular business in hand in the
same line of employment, or their duties being such as to
bring them into habitual association, so that they may
exercise a mutual influence upon each other, promotive
of proper caution. (*Chicago and Eastern Illinois Railroad
Co.* v. *Kneirim, supra,* and cases cited therein; *Wenona Coal
Co.* v. *Holmquist, supra,* and cases cited therein).

The clause: "so that they may exercise a mutual in-
fluence upon each other promotive of proper caution;"
qualifies both of the preceding clauses which are sepa-
rated by the disjunctive, "or." To be fellow-servants they
must be directly co-operating with each other in the par-
ticular business in the same line of employment, so that
they may exercise a mutual influence upon each other
promotive of proper caution. (*Chicago and Alton Railroad
Co.* v. *Swan,* 70 Ill. App. 331). That this is the proper
construction of the definition, laid down in the books, of
fellow-servants will appear from the reasons lying at the
basis of that definition, as given in the case of *Chicago
and Northwestern Railroad Co.* v. *Moranda,* 93 Ill. 302, which
is the leading case in this State upon the subject of
fellow-servants, and the foundation of all the subsequent
decisions of the court upon that subject.

Co-operation means working together (*con* together
and *opus* work). The two clauses draw a contrast be-
tween, or set over against each other, co-operation in a

particular business and habitual association in the performance of duties. But whether the co-operation is in a particular business in the same line of employment, or there is habitual association in the performance of duties, in either case the situation of the parties must be such that they may exercise a mutual influence upon each other promotive of proper caution. Persons can be directly co-operating with each other in a particular business in hand, and still not be in such a position that one could influence the other so as to make him cautious. Two persons may be directly co-operating with each other in running a train, as a brakeman on a train and as a train dispatcher, and yet they would not be regarded as fellow-servants because one cannot influence the other for caution. One is a superior servant to the other, or one is a vice-principal over the other. Two persons may be directly co-operating with each other in the particular business in hand, and not be near each other, or have anything to do with each other, as, for instance, one person may be running one train of cars on the Illinois Central railroad in the State of Louisiana, and another in the State of Iowa. While they would both be co-operating with each other in the particular business of running trains on one railroad, they would not be fellow-servants under the rule laid down in the Illinois cases.

The Appellate Court, in their finding of facts, make application of a faulty definition of fellow-servants. They find that the injury was caused by a person, who co-operated with the appellant in the particular business in hand and in the same line of employment, but not necessarily a person standing in such a relation to the appellant, that he and the appellant might exercise a mutual influence upon each other promotive of proper caution. Therefore, the finding of facts made by the Appellate Court upon the subject of fellow-servants is not only defective in not indicating whether or not the servant causing the injury was the station agent or the brakeman on

the freight train, but also in not applying a proper legal definition in order to determine the facts found.

In addition to what has been said, it cannot be doubted that the injury here was caused in part by the station agent who was not a fellow-servant. The station agent certainly contributed to the injury by not causing the switch to be closed, when he could have had it closed in time to prevent the injury. Consequently, even if the injury was caused in part by the brakeman on the freight train who left the switch open, there were two wrong-doers, one of whom was jointly liable with the other; and, under this state of facts, the defendant company was liable. Where the negligence of two independent persons results in injury to a third, when neither is suffi-cient in itself, both are to be treated in combination as the proximate cause of the injury. Where the negligent acts of two persons are, in combination, the proximate cause of the injury, either or both may be held responsi-ble for the consequences resulting from their combined negligence. Where the negligence of the master is com-bined with the negligence of a fellow-servant in produc-ing the injurious result, and neither is the efficient cause alone, the master as well as the fellow-servant is liable. In other words, where the negligence of the master, whether due to his own fault or that of his vice-principal, contributes to the injury, the servant is entitled to re-cover. (*Pullman Palace Car Co.* v. *Laack, supra; Consolidated Ice Machine Co.* v. *Keifer,* 134 Ill. 481; *St. Louis Bridge Co.* v. *Miller,* 138 id. 465; *Village of Carterville* v. *Cook,* 129 id. 152). The Appellate Court, in view of the testimony in regard to the duties of the station agent, should have made a finding upon the question whether or not the negligence of the station agent contributed to the injury.

For the errors thus indicated I think that the judg-ment of the Appellate Court should be reversed, and that the judgment of the circuit court should be affirmed.