## Cleveland, C., C. & St. L. Ry. Co. v. John Lawler, Adm.

1. JURISDICTION—*Of State and Federal Courts.*—Where a suit for personal injuries is commenced in a State court, in which an amount exceeding $2,000 is claimed as damages, and is removed to a Federal court, the plaintiff may dismiss the suit in the Federal court and begin a new action in the State court for the same cause, and for an amount less than $2,000.

2. FELLOW-SERVANTS—*Where the Employer is Not Liable.*—When one employe is injured by the negligence of another while they are co-operating with each other in a particular business in the line of their employment and the due observance of their duties, necessarily exercising an influence upon each other promotive of proper caution, they are to be considered as fellow-servants, and the employer is not liable if he is, himself, guilty of no negligence.

**Trespass on the Case,** for personal injuries. Appeal from the Circuit Court of Edgar County; the Hon. HENRY VAN SELLER, Judge, presiding. Heard in this court at the November term, 1900. Reversed, with a finding of facts. Opinion filed February 28, 1901.

**Statement.**—In an accident occurring in or near the city of Mattoon, August 16, 1898, James Lawler was killed, and the appellee, his administrator, having attributed the cause of his death to the wrongful act, neglect or default of the appellant, caused this action to be brought to recover for the pecuniary injuries resulting to his next of kin.

The declaration, consisting of three counts, charges, in substance, in the first and second counts, that the deceased was a fireman upon one of appellant's locomotive engines, driven in a westerly direction in the night time from the city of Mattoon, with a train of freight cars

attached, under the control of an engineer, over that portion of appellant's road west of said city, that forms a part of its Mattoon railroad yards, the deceased at such time being in the exercise of due care; the part of the road then being driven over consisted of two main parallel tracks, to a point west of the crossing of appellant's road with the P. D. & E. R. R., at which crossing appellant maintained an interlocking plant, with tower, levers and switch apparatus, and a servant to operate the same; the general rule was that west bound locomotives and trains, unless otherwise specially ordered, used the north of the two parallel tracks. On the night in question the engine and train with which deceased was serving, was directed to use the south track, in consequence of which it was defendant's duty to notify the switchman in the tower of the interlocking plant of the order to use the south track, which was not done, and the said switchman in the tower, having no notice of such use of the south track, expecting the north track to be used, set the switches for the north, and the derail for the south track, and the switchman was unable to see the approach of the engine upon the south track. A hand signal was given by one of the defendant's servants in front of such engine, meaning the track was safe to proceed over, and the engineer in charge of the engine proceeded accordingly, and, the derail being open, the engine was turned over, and James Lawler was, in consequence, killed. The third count of the declaration specifically charges the accident to the fault of the switchman in the tower. Appellant petitioned the court to remove the cause to the United States Circuit Court, upon the grounds, in substance, that previous to the present action, a former suit for the same cause, claiming more than $2,000, had been removed from the State to the Federal court, and in the latter court dismissed, and this suit was but the renewal of the former with a reduced *ad damnum* below $2,000, which petition the court denied, and appellant afterward renewed the same matter in the form of a plea in abatement, to which the court sustained a demurrer, after which the plea of the

general issue was filed to the declaration, and a trial by jury of the issue so formed ended in a verdict against appellant for $1,800, and the answers to certain special interrogatories submitted to the jury. The court overruled appellant's motion for a new trial and gave judgment upon the verdict, to reverse which this appeal is brought, and numerous errors are assigned upon the record, the chief among which, urged upon the attention of the court, are: (1) The denial of the petition to remove the cause to the Federal court; (2) the court admitted improper and excluded proper evidence; (3) the court misdirected the jury in its instructions and refused proper instructions, requested by appellant, especially the instruction asked at the close of all the evidence directing a verdict for the defendant; and (4) the verdict is not supported by the evidence.

C. L. CONGER, R. L. McKINLAY and GEO. F. McNULTY, attorneys for appellant.

F. W. DUNDAS and F. T. O'HAIR, attorneys for appellee.

MR. JUSTICE WRIGHT delivered the opinion of the court.

There is, in our opinion, no merit in, or valid reason for, the contention of appellant that the State court had no jurisdiction of the cause after once the case had been removed to the Federal court, a non-suit suffered therein, and a new action begun in the former court for a lessened demand for the same cause of action. After the suit was dismissed by the order of the Federal court, its jurisdiction of the case ended. The plaintiff had the right, if he chose, to limit the amount of his demand, as he did in the present suit, to a sum less than $2,000. The act of Congress conferring jurisdiction upon the ground of diverse citizenship, limits such jurisdiction of the Federal courts to cases where the matter in dispute exceeds, exclusive of interest and costs, the sum of $2,000. After the suit was dismissed by the Federal court, that court possessed no jurisdiction to entertain it, unless the amount in dispute exceeded $2,000, exclusive of interest and costs, and as the plaintiff is limited to the amount claimed in the declaration,

the amount in dispute did not exceed that sum. It follows, therefore, the Federal court has no jurisdiction; and if the State court has no jurisdiction, as argued by appellant, the cause of action is in the anomalous condition that it is without jurisdiction of any court to decide unless the plaintiff will claim more than $2,000, to which he might well have had conscientious opposition, that idea having subsequently been illustrated by the verdict in the case, fixing the amount at $1,800. A good and sufficient answer to the argument for such removal, therefore, is, that there is no statute providing for the removal of a cause so situated, and we think the court ruled correctly, both in denying the petition for such removal, and in sustaining the demurrer to the plea in abatement.

The evidence proves that appellant maintained extensive yards in the city of Mattoon, extending east and west across the Illinois Central Railroad, approximately, one mile east and one mile west, and at the west end of the yards is the crossing of the P. D. & E. Railroad, and at this latter crossing appellant maintained an interlocking plant with the usual apparatus, the operator being located in a tower constructed for the purpose. Between the Illinois Central crossing and the P. D. & E. crossing, there is within the yard limits a double main track and a few switch tracks. The main tracks are called north and south main tracks, the former commonly used for west bound trains, and the latter for east bound; but it occasionally happened, by the arrival of many freight trains the north main track would be blocked, and while that lasted, the south main was used as a single track, for the passage of all trains, east and west. The two main tracks were about fifteen feet apart, and from the south main track, between the points of the two railroad crossings, there were two side tracks provided with switches and switch lights, one of these being the P. D. & E. " Y," which was located 1,037 feet east of the tower of the interlocking crossing, and 690 feet east of the dwarf signal of the derail of the south main track, in connection with the interlocking apparatus. The movement of trains at the interlocking was governed entirely

by signals. Trains going west over the north main were controlled by a semaphore, twenty-five feet high and 342 feet from the crossing, a red light indicating the derail is against the train, and a white light safety; but a white light, while indicating the north main is set for trains going west, at the same time indicates the south main is set to derail west bound trains, which would be further indicated by the dwarf signal showing red at the derail of the south main track.

On the night of the accident the yards were blocked with an unusual number of trains, and an order was issued, at request of the yard master, to use south main track as a single track for all trains both ways. A gravel train went east over the south main about nine o'clock that night and passed safely over the interlocking crossing while Shutt, the tower switchman, was on duty. About midnight the train upon which Lawler was fireman started west over the south main, and Shutt, the tower switchman, set the north main track for such train, which operation, as before explained, set the derail of the south main track against the train, as would have appeared if the signal of the white light of the semaphore and the red light of the dwarf signal had been noticed and properly heeded by the engineer and fireman. The engineer, in his testimony, says he did not look at the semaphore, and the dwarf signal was not burning. The evidence is conflicting relative to the dwarf signal; but we think the greater weight of the evidence is that it was in order and burning at this time. The unfortunate thing that happened was that the engineer mistook an all right signal, given for the switch at P. D. & E. " Y " by a man with a switch engine waiting there, for a ground or hand all right signal for the interlocking crossing, and, acting upon it as such, proceeded, and the derail being set against his engine, it turned over and killed Lawler.

It is averred in the declaration, and insisted upon in the argument, that appellant was negligent in failing to notify the tower switchman that the south main track was being used for west bound trains, for the reason, as it is argued, the switchman could not distinguish in the night time,

C., C., C. & St. L. Ry. Co. v. Lawler.

especially a foggy one, as this was, upon which track the engine was proceeding when it left the Illinois Central crossing. The evidence shows that the operation of all trains and engines within yard limits, as this was, had ever been and was at this time controlled only by signals, and this all the employes of appellant knew. They were not permitted to rely partly upon orders and partly upon signals, for the very good reason, doubtless, that such a practice would tend to produce laxity among those whose duty it always is for each to so act as to promote proper caution in all for the safety of all. We think appellant was not negligent in this respect. The tower switchman had already that night properly set the south main track to safely pass a west bound train. Had he been cautious, as his employment demanded, and properly heeded his surroundings, and remembered the gravel train, no doubt can be indulged he would have known the engine was approaching on the south track; he did at last, as he says, make the discovery, but owing to the excessive speed of the train in yard limits he was unable to move the lever. It may often happen that a train is entitled to the right of way at a given crossing, and at the same time the derail be set against it. This may be, for the purpose of the argument, considered the situation of the train by which Lawler was killed. Does that furnish any justification or excuse to run upon the crossing without first using caution to discover the exact meaning of the signals displayed? The engineer had no reason to expect a ground or hand signal from the tower man. He had no notice the interlocking apparatus was out of order, and it was not. All agree that if the dwarf signal was not burning, as he claims it was not, that would be the same as a danger signal. The absence of a signal at such a place is an indication of danger, and it was the clear duty of the engineer to stop and investigate. The undisputed evidence is that the semaphore white light meant danger to a west bound train on the south track—the engineer himself admits that—but he did not see, or look to see it. In his testimony he says that both he and Law-

ler could have seen the semaphore light had they only looked. We have no reasonable doubt the accident was the direct result of the failure of the engineer to properly examine for and heed the signals then existing. It was a part of the duty, also, of the deceased, to keep a lookout for these same signs. It is conceded, the engineer and the fireman, Lawler, were fellow-servants, and for injuries in consequence of the negligence of the engineer, there can be no recovery. It is doubtful, in our opinion, that the negligence of Shutt, the tower switchman, if he was negligent, contributed in any considerable degree to, or was the efficient or proximate cause of the injury. But even if that was true, Shutt was but the fellow-servant of the engineer and fireman. They were directly co-operating with each other in the particular business then in hand, namely, the passing of the train out of the yards and across the P. D. & E. crossing, and in the same line of employment, namely, the running of trains upon appellant's road, and their usual duties, namely, the giving of signals by the one and the due observance thereof by the others, would naturally, and we think necessarily, exercise an influence upon each other promotive of proper caution, thereby fulfilling the requirements of the rule in that respect. Ill. Cent. R. R. Co. v. Swisher, 74 Ill. App. 164, and cases cited; same cases, 182 Ill. 533.

In view of what we have already said, we deem it unnecessary to consider the other assigned errors pressed upon our attention.

For the reasons given, the judgment of the Circuit Court will be reversed.

**Finding of facts** to be recited in the final order of the court:

And the court finds from the evidence in the case as the ultimate facts herein that appellant is not guilty of the negligence charged against it in the declaration in the case, nor in any count thereof; that the said James Lawler was a fireman upon one of appellant's locomotive engines, which engine was in charge of Robert Clark as engineer; and that

said James Lawler and Robert Clark were fellow-servants; that the cause of the accident which derailed the engine, turned it over and killed Lawler, was the want of ordinary care, and the negligence, of Robert Clark, the engineer, in failing to observe and heed the danger signals then displayed at the railroad crossing where the accident happened; the court also finds that Shutts, the tower switchman, was a fellow-servant of both Lawler and Clark, the fireman and engineer, directly co-operating with them in the particular business then in hand and in the same line of employment, and that his negligence in failing to sooner observe the approach of the engine to the crossing contributed to such accident, but that such negligence of Shutts was not the proximate cause of the accident, such proximate cause being the failure of the engineer and fireman to use ordinary care to see and heed the danger signals actually displayed.