KASTL *v.* WABASH RAILROAD CO.

1. RAILROAD COMPANIES — UNION TRACKS AND YARD — FELLOW-SERVANTS.

A switchman in the employ of a board composed of representatives of three railroad companies, to whose general control of a union depot, tracks, and yard the individual companies are subject, is not a fellow-servant of a car inspector employed by one of the companies, even when the switchman is engaged in handling the business of that particular road.

2. SAME—CAR INSPECTORS—NEGLIGENCE OF SWITCHMEN—ASSUMPTION OF RISK.

A car inspector so employed does not assume the risk of injury from the negligence of such switchman, so as to preclude a recovery for his death in an action against the roads in their associate capacity.

Error to Wayne; Carpenter, J.    Submitted June 16, 1897.    Decided July 16, 1897.

Case by Annie Kastl, administratrix of the estate of Anthony Kastl, deceased, against the Wabash Railroad Company, the Detroit, Lansing & Northern Railroad Company, and the Flint & Pere Marquette Railroad Company, associated and doing business as the Union Terminal Association, for negligently causing the death of plaintiff's intestate.    From a judgment for plaintiff, defendants bring error.    Affirmed.

*Alfred Russell,* for appellant Wabash Railroad Co.

*E. A. Gott,* for appellant Detroit, Lansing & Northern Railroad Co.

*Hanchett & Hanchett,* for appellant Flint & Pere Marquette Railroad Co.

*Lemuel H. Foster,* for appellee.

HOOKER, J. The plaintiff's intestate was a car inspector in the employ of the Wabash Railroad Company, and, while engaged in the inspection of certain cars belonging to said company, was killed through the error of a switchman in throwing a switch, whereby another train was sent against the cars which he was inspecting. It is conceded that if the switchman, Hamill, was in the employ of the defendant Wabash Railroad Company, there can be no recovery, as in that case the alleged negligence of Hamill was that of a fellow-servant. It is contended, however, that this cannot be said, and that Hamill was the employé of a different "entity" than the intestate's employer, going by the name of the "Union Terminal Association." The record discloses that the depot, yards, and tracks were occupied jointly by the three defendants, which were separate and distinct railway corporations, and that, for their mutual convenience and economy in managing their respective railroads, they united in the expense of yard and depot work, contributing proportionately, and managing it, through officers and employés, under the name mentioned, and a written contract, which recognizes that "the employés are in the joint service of the parties to the contract." The business of the depot and yards was put in charge of a board, consisting of representatives of the respective companies, and this board employed and directed men to do yard work for all. These men were paid by the board from a fund in their custody, contributed in the first instance, and periodically replenished, by the defendant companies, constituting the terminal association, so called. The switchmen, yard-

master, and others were employed and controlled by this board, and the business of locating and moving trains in the yard was conducted by it.    The intestate was employed by the Wabash Company to inspect its cars, and presumably received his pay from said company, but, like all other employés upon and about trains, while in the yards, worked under and subject to the regulations and methods prescribed by the board in the management of the yard.

It seems to be conceded that the switchman and the intestate were engaged, at the time of the accident, in the common enterprise of handling the business of the Wabash road; and, as we understand the plaintiff's contention, the case should turn, so far as the doctrine of fellow-service is concerned, on the question whether it can be said that they were at work for a common master.    Under his employment, this switchman, though engaged in the business of the Wabash road at the particular time when the accident happened, was to do business for the general convenience of all the companies, to which the ordinary use by each company of its tracks and portion of the yard was made in a manner subservient.    This made it impossible for either road to conduct its business in all departments, and made the necessity of placing the control of some portion of its business beyond its own control imperative.    Therefore the companies, by mutual arrangement, placed such control in the hands of a board, which, though made up of representatives of the three roads, was beyond the power of any one road to control.    The conduct of the business, as to the handling of trains in the yard, was as much beyond the control of any one company as though it were done by a separate corporation under contract, in which case it could not be said that these men were fellow-servants.    The case of *Northern Pacific R. Co.* v. *Craft*, 69 Fed. 124, was a case where several roads used a station and yards belonging to a corporation known as the "Northern Pacific Terminal Association."    A terminal association employé was killed by the negligence of a

Northern Pacific engineer, and it was held that the men were not fellow-servants, the court saying:

" It is true that Craft's duties were to check up the cars that came into the yard, whether they belonged to the Northern Pacific Railroad Company or to other companies; but, so far as the record indicates, he was in a distinct and separate employment from that of Stapleton, and they were in no sense under a common master, *or subject to the same control.*"

This case cites and discusses the case of *Phillips* v. *Railway Co.*, 64 Wis. 475, which used similar language regarding an accident occasioned to a train running over another company's road, through the negligence of the latter's servant.    The case also discusses and distinguishes *Chicago, etc., R. Co.* v. *Clark*, 2 Ill. App. 596, and *Johnson* v. *City of Boston*, 118 Mass. 114, which last case is relied upon as an authority sustaining defendants' contention.    It is shown that in these cases the servants were engaged in a common enterprise, and that they were, for the time being at least, under the control of a common master.    *Sanford* v. *Oil Co.*, 118 N. Y. 571 (16 Am. St. Rep. 787); *Philadelphia, etc., R. Co.* v. *Bitzer*, 58 Md. 372; *Texas & Pacific R. Co.* v. *Easton*, 2 Tex. Civ. App. 378; *Warburton* v. *Railway Co.*, L. R. 2 Exch. 30.

It is also contended that the intestate assumed the risks incident to such control.    Were this an action against the Wabash Railroad Company alone, based upon a contract to employ competent men to do its switching, it is possible that the case would be ruled by decisions which hold that where one railroad company runs its trains upon another road, over the operation of which it has no control, the employés of the former assume the risks incident to the use of such road under such management, and that their employer would not be liable for injuries resulting from the negligence of the employés of the other road.    But it does not follow that such employés might not recover against such other road, which would certainly owe them the duty that is due to a stranger, if nothing more.    This cause is not brought against the Wabash Railroad Com-

pany, but against the three companies, upon whom the responsibility rested, by reason of their mutual contract, none the less than as though they constituted a separate and distinct corporation, owning or having exclusive control of the premises. See *Smith* v. *Railroad Co.*, 19 N. Y. 127. In this case a New York & New Haven employé was injured while his train was running over the Harlem road, through the negligence of an employé of the latter, which had control of its road. Held, that the Harlem road was liable, and that the men were not fellow-servants. The case of *Catawissa R. Co.* v. *Armstrong*, 49 Pa. St. 186, was similar.

It is next contended that the intestate was for the time being a fellow-servant of the switchman, because he engaged in the common work of the terminal association, voluntarily. But there is nothing to show that he was engaged in such work. It does not appear that the inspecting of Wabash trains was undertaken by the terminal association, or was any part of its duty under the contract. There is nothing to show that the several roads surrendered the right to clean, inspect, repair, or otherwise care for their trains in the yard, while upon the tracks to which they were assigned, and upon which they were placed. Hence we may safely say that they were neither at work for such association as a common master, nor were they engaged in the common employment of the association. That two persons can in a sense be engaged in accomplishing a given object, and yet not be fellow-servants of a common master, is shown by the following cases. *Svenson* v. *Steamship Co.*, 57 N. Y. 108, is a case where one of the crew of a lighter, engaged in unloading a ship, was injured by one of the crew of the ship throwing a bale of tobacco into the lighter, at a time when the man who suffered the injury was endeavoring to recover a bale which had fallen into the water. See, also, *Zeigler* v. *Railroad Co.*, 52 Conn. 555; *Sullivan* v. *Railroad Co.*, 44 Hun, 304; *Jones* v. *Railway Co.*, 125

Mo. 666; *Central Railroad* v. *Stoermer*, 51 Fed. 518; *Davi* v. *The Victoria*, 69 Fed. 160; *Johnson* v. *Navigation Co.*, 132 N. Y. 576; *Johnson* v. *Lindsay & Co.*, 16 App. Cas. 371; *Swainson* v. *Railway Co.*, 3 Exch. Div. 350.

We have not overlooked the fact that there may be a joint employment by two companies of a servant, who should have duties to perform for both employers, like a gateman or target keeper or watchman, and who perhaps might be a fellow-servant with the employés of such companies; but this cannot be where the master has parted with the power of employing and discharging such servant, and directing and controlling him in the discharge of his duties.

It follows that the judgment should be affirmed, and it is so ordered.

The other Justices concurred.