GRAHAM v. DETROIT, GRAND HAVEN & MILWAUKEE
RAILWAY CO.

1. MASTER AND SERVANT — RAILROADS — PERSONAL INJURIES —
WARNINGS AND INSTRUCTIONS—EVIDENCE—SUFFICIENCY.
    In an action against a railroad company for the death of a ser-
    vant caused by the precipitation of a work train into an ex-
    cavation caused by a washout, evidence examined, and *held*,
    to be undisputed that the train dispatcher made proper effort
    to acquaint the train men with the known conditions of un-
    safety of the track by sending a message addressed to them,
    and that a finding to the contrary was unsupported.

2. SAME—WARNING—SUFFICIENCY—FELLOW-SERVANTS.
    Where a work train was sent out to repair damage to railway
    tracks caused by a storm, and the train dispatcher made
    proper effort to acquaint the train men with the known con-
    ditions of unsafety by sending them a telegram containing
    such information, the railroad company performed its whole
    duty in the premises, though the telegram was not delivered
    by the station agent, who received it, to the train men.

Error to Clinton; Searl, J.   Submitted April 11, 1907.
(Docket No. 63.)   Decided March 31, 1908.

Case by Rose E. Graham, administratrix of the estate
of Justin E. Graham, deceased, against the Detroit, Grand
Haven & Milwaukee Railway Company for the negligent
killing of plaintiff's intestate.   There was judgment for
plaintiff, and defendant brings error.   Reversed.

*H. Geer*, for appellant.

*Lyon & Moinet*, for appellee.

So much damage was done to defendant's roadbed, at
points west of Owosso, by a severe rain storm, that on
June 6, 1905, all trains over the division were annulled.
Information of the condition of the road was reported by
wire to Durand, the headquarters of the division, to the

train master, H. W. Matthews, and included a report, made by section men, that at Lost Creek or mile post 111, about two miles east of Pewamo, where there was a culvert with a stone arch, 35 feet of the roadbed was washed out. On the morning of June 6th, a train, loaded with tools, materials, and a force of men, with a boarding car and a pile driver, some 25 cars in all, was dispatched from Durand, leaving that place during the forenoon of June 6th. The conductor of the train was S. J. Wallace, the engineer William Everett. George J. Bishop, master of bridges and buildings for the defendant's system, was also on the train, and was the superior officer or agent of defendant, in charge of the repairs to be made. Plaintiff's intestate, Justin E. Graham, had been for some time foreman of one of defendant's bridge and building crews. He and his men, with others, picked up at various stations, to the number, finally, of about 50, made up the crew. This train left Durand with the following order:

"Order No. 109.    Engine 1104 will run extra Durand to Pewamo."

The stations on defendant's road from Durand westward, so far as it is necessary to name them, are Vernon, Corunna, Owosso, Ovid, St. Johns, Fowler, Pewamo, in the order here given. A stop was made between Durand and Vernon to examine a culvert. At Corunna, the train was stopped, the order board being against it. It is the claim of defendant that a certain telegram had been sent, was awaiting delivery, and was delivered at Corunna. The jury in answer to special questions found that this message was not delivered to the conductor or engineer, nor, in fact, sent from Durand to Corunna. An alleged copy of the message was produced, received in evidence, and reads:

"From Durand, June 6th, 1905.
"To cond'r & Eng'r Extra West 1104.    At Corunna.
"Run slow over bad track two miles east of Owosso.
"Track Owosso Jct. to Burton O. K.
"Ovid to St. Johns no reports.

"St. Johns three miles west slow.

"Fowler section O. K.

"Stone arch bridge, mile post 111, east of Pewamo gone, 35 foot embankment.

"¾ miles west of Pewamo washout 15 feet long and 108 feet deep.

"Culvert 2 miles west of Pewamo washout 30 feet long and 20 feet deep.

"Culvert 1 mile west of Muir washed out.

"Prairie Creek bridge 1¾ miles east of Ionia east end washed out 30 feet long and 10 feet deep.

"1½ miles east of Saranac 40 foot washout.

"1 mile east of Saranac 40 foot washout.

"½ mile east of Saranac water running over track.

"Approach to bridge west end of Saranac yard unsafe.

"Bridge over Kopf Creek, east end of Lowell yard, gone and 20 foot washout.

"M. P. 148 west of Lowell 225 foot washout three to five feet deep.

"M. P. 146 east of Ada washout 100 feet long, six feet deep.

"H. W. M."

The initials H. W. M. mean H. W. Matthews. At St. Johns the following order was received:

"Order No. 125.    To C. & E. engine 1104.    Order No. 109 is annulled.    Engine 1104 will work 11:15 a. m. until 7 p. m. between St. Johns and Pewamo.    Issued 11:13; O. K. 11:14."

That no regular trains were being run over the road, the conductor and engineer of this train knew, through various orders canceling scheduled trains, and all of the men by the very fact that such trains were not running. At St. Johns, by direction of Mr. Bishop, the pile driver which had been in the train was put ahead of the locomotive, and conductor Wallace took a position on the running board on the front of the pile driver, stationing a brakeman on the roof of the cab of the pile driver both for a lookout and for the purpose of insuring the attention of the engineer to any signals which should be given by Wallace. As a reason for taking this position, the conductor, who was a witness, said:

"I placed myself there so that I could find a flag or anything on the track that didn't look right—I could give the signal to stop."

A short distance west of St. Johns a culvert was repaired. Two miles farther west the train was flagged by a section man and another washout repaired. This was completed between 4 and 4:30 o'clock. Just east of Fowler a culvert was examined. The run through Fowler was made, without stopping, at 4:36 p. m. From this station to mile post 110, there is an up grade, from thence west a heavy down grade, extending to or near mile post 111. The washout at post 111 was not discovered by Wallace until the train was near it. The rails and ties, though sagging, were in place, the train was not stopped until the pile driver and perhaps the locomotive or a part of it were upon the defective portion, and the result was that, although the signal of Wallace to stop was obeyed, the pile driver, its tender, the locomotive and tender, and three or four cars of material were precipitated into the excavation. Mr. Graham, with a number of the men, was riding on the pile driver and was killed, as was also the engineer, Everett. No signals had been placed to indicate danger. George J. Bishop, the master of bridges and building, was not a witness at the trial, and the record discloses no reason for his absence. The testimony of the station agent is that, when he went with the message to the locomotive, Bishop was standing in the gangway; that he handed the message to him, telling him what it was, and that he saw Bishop give it to the engineer. The conductor of the train testified that he had not seen the message and had no knowledge of particular defects in the road. It is alleged in the declaration that the engineer and conductor of the train were ignorant of the existence of the washout at mile post 111; that defendant did know about it; that it was the duty of defendant to notify the conductor and engineer of the danger, and that in undertaking to transport plaintiff's intestate over its road without imparting this knowledge to them, or causing signals of danger to be displayed, in_

stead of doing which it gave them the orders hereinabove referred to, there was a breach of duty, to which the catastrophe may be directly referred. In the second count of the declaration, the duty to notify the conductor, engineer, and plaintiff's intestate of the condition of the track is averred, and it is charged that plaintiff's intestate was, in consequence of the breach of this duty, subjected and exposed to an unusual and extraordinary risk, of which he had no notice or knowledge.

Among other things, the trial court said to the jury:

"But if you find that this message was not received by the engineer, and that neither he nor the conductor in charge of said train had any knowledge of the existence of this washout until they saw it, when it was too late to avoid the accident, then in that case the plaintiff would be entitled to recover, providing you find that Graham did not assume the risk and did not have notice of the washout, and this would be so even though you find that the message was actually sent by the dispatcher to Corunna, and even if you find that it was actually delivered to Bishop.

"The agent at Corunna who received this message, if you find one was received by him, was not a fellow-servant of Graham, because it was an absolute duty resting upon defendant to give notice of this washout, which it could not delegate to one of its agents so as to make him a fellow-servant in performing that duty, providing you find that the washout was an unusual or extraordinary condition."

There was a verdict and judgment for the plaintiff, the result, it is claimed, of various errors of the trial court. Two motions for a new trial were made and were denied. Counsel for defendant say the contentions presented by the assignments of error are:

"1. The undisputed evidence shows that Exhibit 2 [the telegram hereinbefore set out] was sent to Corunna and that the same was delivered to engineer Everett.

"2. The defendant company was not guilty of any negligence which caused or contributed to cause Mr. Graham's death, and the trial judge should have directed a verdict, as requested, of no cause of action.

"3. If the station agent at Corunna, Mr. Humphrey, was negligent in not delivering this message to both the conductor and engineer of extra west 1104, yet, this being the negligence of a fellow-servant, the plaintiff is not entitled to recover.

"4. Plaintiff's decedent, knowing the unsafe and defective condition of defendant's track on the morning of June 6th, assumed the risk of this accident. In other words, the duty of the defendant to furnish a reasonably safe roadbed for its employés has no application to the case at bar.

"5. Having received the order at St. Johns to work from 11:15 a. m. until 7:00 p. m. between St. Johns and Pewamo, the defendant had performed its full duty as to informing the persons on this train of the unsafe condition of its tracks.

"6. The negligence of the section foreman at Pewamo, Michael Eustace, in failing to place signals a sufficient distance east of the washout at 111 mile post, as required by the company's rules, in order to give warning to the conductor and engineer of this train, was in this case the negligence of a fellow-servant, and plaintiff is not entitled to recover."

OSTRANDER, J. (*after stating the facts*). Counsel for plaintiff say in the brief:

"The subsidiary proposition, whether the station agent at Corunna was a fellow-servant with Graham, is not of the slightest importance on this record, and will not be discussed by us. The reason for so saying is that if the plaintiff made a case to go to the jury on the question whether the message  *  *  *  was in fact sent and addressed to the conductor and engineer, then the finding of the jury in that respect is conclusive, because no question can arise of Humphrey's negligence in failing to properly deliver something which he did not receive. Upon the other hand if (1) plaintiff did not make a case to go to the jury on whether the message was in fact sent, or if (2) the finding of the jury that the message was not sent was against the weight of the evidence, then this court will, and ought to, reverse the judgment without reference to the question whether Humphrey and Graham were fellow-servants or not. In either event, whether the message was sent, or was not sent, the question

whether the Corunna station agent and Graham were fellow-servants has absolutely no significance on this record."

But counsel do insist that the duty resting upon defendant to notify either plaintiff's intestate or the train men of the known condition of the road was a positive and absolute duty. The testimony upon the subject of delivery of the message to the train men is conflicting. That a message containing the information indicated was sent to Corunna, and that the train was stopped at Corunna, by signal, and was cleared, or released without receiving orders, is undisputed. Whether the message, to deliver which was the reason for stopping the train, was addressed to the engineer and conductor of the train, is the precise question debated by counsel. Plaintiff claims that whatever message was sent was addressed to Bishop and delivered to Bishop and remained in his hands. Defendant claims that it was addressed as the copy produced indicates, and that though it was handed to Bishop it was by Bishop given to the engineer and read by him, and that the conductor was told by the station agent that the engineer had a message concerning washouts. As all of the direct testimony introduced upon the subject of the sending of the message properly addressed and the receiving of it at Corunna supports a conclusion favorable to the defendant, a finding that the message was not sent must rest entirely upon inference. With the aid of counsel, we have examined the record, which is certified as containing the substance of all the testimony, for the purpose of discovering, if we can, in support of the finding of the jury, testimony from which the inference may be drawn. We do not find it in the fact, if it is a fact, that the message was not delivered by the station agent to the engineer and conductor, in the fact that the original of the message has been lost or destroyed, in the fact that the station agent, Humphrey, is disputed upon material points, in the fact that the fireman is disputed, or even discredited, as a witness, in the fact that other of defendant's witnesses are disputed, in

the fact that the message contained information of the condition of the road beyond the point expected to be reached by the train during the work of the day and to which a working train order had been given. In view of the positive and undisputed testimony of the making up, addressing, and sending of the message, we cannot find it in the fact that Bishop was not produced as a witness at the trial. The testimony relied upon in support of the finding is not inconsistent with the testimony regarding its form and its transmission. The principal argument advanced for plaintiff in support of her contention is that the jury were warranted in disregarding the testimony introduced by defendant tending to prove that the message was delivered. The argument is unsound. Whether the message was sent and whether it was delivered are separate and distinct questions. Circumstances which justified the finding that the message was not delivered to the train men did not justify a finding that it was not sent by the train dispatcher. We have, therefore, after a careful examination of the record, reached the conclusion that the finding of the jury that the message in question was not sent is unsupported by evidence. This requires us to reverse the judgment and to order a new trial, for the reason that the jury should have been instructed that if they found that the train dispatcher at Durand made proper effort to acquaint the train men with known conditions of unsafety, defendant had performed its duty in the premises. There is considerable testimony tending to prove that less care is generally observed to insure the delivery of messages than is used to insure delivery of train orders. Evidence of delivery of train orders is secured at the central or directing office before trains are cleared. Such orders are, in effect, receipted for by the train men or by the conductor of the train. Defendant was bound to use a degree of care commensurate with the importance of the communication and the purpose for sending it, not only in transmitting the message but in securing its delivery to the proper persons. But we are not prepared to hold that in

performing that duty it had not the right to rely, reasonably, upon its servants, agents, and means of communication, or to use other means of communication if its own were defective. We are referred to no case, and have found none, precisely in point. The case of *Mercantile Trust Co.* v. *Railway Co.*, 115 Fed. 475, 53 C. C. A. 207, is in some respects similar. But in that case the train dispatcher who possessed the information did not act, the train men who were entitled to notice were in the regular service of moving one of the defendant's trains, the danger was caused by an extraordinary storm. The facts brought the case, in the opinion of the court, within that class of cases where the duty of informing the servant of special or extraordinary risks connected with his service is held to be a primary duty of the master. In the case at bar, the service was the repair of the road injured or destroyed by a storm which had not yet spent its force. The nature of the service was known to every one on the train. These facts serve to distinguish the cases. The duty of the master to minimize danger by giving notice of the places where defects existed has been stated. If in performing this duty, by the use of means adequate to impart the knowledge to the proper persons, in proper season, the purpose was defeated by negligence of the station agent, which due care on the part of the master would not have prevented or discovered, defendant is not responsible for the consequences. We intimated this principle in *Moon* v. *Railroad Co.*, 143 Mich. 125, 135. It requires a high degree of care but does not extend so far as to impose a positive and wholly non-delegable duty upon the master.

The judgment is reversed, and a new trial granted.

BLAIR and McALVAY, JJ., concurred.

CARPENTER, J. I agree with Justice OSTRANDER that if "the train dispatcher at Durand made proper effort to acquaint the train men with the known conditions of unsafety, defendant had performed its duty in the premises."

I agree with him that the undisputed testimony proves that said train dispatcher did undertake to acquaint the train men with such known conditions of unsafety by telegraphing the conductor and engineer of said train at Corunna. I think by sending this telegram the train dispatcher adopted the obviously proper method of acquainting the train men with those conditions. It was a method, too, which would have been entirely sufficient had not the station agent at Corunna failed to perform his duty. The train dispatcher had a right to assume, and to act upon that assumption, that there would be no failure to perform that duty. Under these circumstances I can perceive no sound reason for saying that something else should have been done, or that what was done should have been done in any different manner. I am of the opinion, therefore,—and here is where I go further than does my Brother OSTRANDER,—that we should say, under the circumstances disclosed by the record, that in sending the telegram to Corunna, the train dispatcher performed his entire duty—and the entire duty of defendant toward plaintiff's intestate. It follows that in my judgment defendant was entitled to a directed verdict. I agree with Justice OSTRANDER that the judgment should be reversed and a new trial granted.

GRANT, C. J., concurred.