STEVER *v.* ANN ARBOR RAILROAD CO.

1. MASTER AND SERVANT—FELLOW-SERVANTS—RAILROADS—CROSSINGS.

> The operator in charge of a tower at the intersection of two railroads, from which an interlocker and derailer is operated on both roads, each of which pays half the compensation, is a fellow-servant of an engineer on one of the railroads.

2. SAME—FELLOW-SERVANTS—STATION AGENT.

> The joint station agent of two intersecting railroad companies, who employs and discharges the towerman, without any authority to prescribe rules for his conduct, and who was not the sole and entire manager of the signal system, is not a representative or vice principal of the master.

Error to Washtenaw; Kinne, J. Submitted January 7, 1910. (Docket No. 12.) Decided March 5, 1910.

Case by Emma C. Stever, administrator of the estate of Charles W. Stever, deceased, against the Ann Arbor Railroad Company and the Wabash Railroad Company for the negligent killing of plaintiff's intestate. A judgment for plaintiff is reviewed by defendant on writ of error. Reversed.

Charles W. Stever was an engineer in the employ of the Ann Arbor Railroad Company, and was operating the engine of a passenger train on December 9th, 1907. The plaintiff's proof tended to show that, when the train approached the Wabash crossing, the towerman at the intersection of the Ann Arbor and Wabash Railways, at Milan, Michigan, first gave the train the proper signal to proceed, but after the engine had proceeded too far to stop, changed the signal and opened the derailer. The deceased did what he could to stop the train and then leaped from the cab, receiving injuries from which he died some weeks later. On the part of the defense, evidence was introduced tending to prove that the deceased mistook the signals on account of the fog and darkness prevailing at the time. The derailer on the two tracks was operated by levers in the tower, so arranged that it would be impossible to close the derailer on both intersecting tracks at the same time.

*Benjamin S. Warren* and *Codd & Drake*, for appellant Ann Arbor R. Co.

*Smith, Baldwin & Alexander*, for appellant Wabash R. Co.

*Arthur Brown* and *A. J. Sawyer*, for appellee.

BLAIR, J. Plaintiff brought this action to recover damages for the death of her husband, a locomotive engineer in the employ of the Ann Arbor Road, alleged to

have been caused by the negligence of the towerman in operating the interlocking apparatus and signal system at the crossing of the two roads at Milan in this State.   Mr. Palmer, the towerman at the time in charge of the semaphore and interlocker, was employed by Mr. Debenham, the station agent for both roads, to whom the two companies had committed the hiring and discharge of the joint employés at Milan; each company paying half of his compensation.   The following are stated in plaintiff's brief to be "the rules formulated by the companies governing the operation of the towerman," viz.:

"All trains will be governed by the signal to the right of their own track as they approach the crossing.

"When the distant signal shows the blade in a horizontal position, or a green light, caution is indicated, and an approaching train must be under full control and prepared to stop before passing the home signal.

"When the distant signal shows the blade in a vertical position by day, or a white light by night, the train may proceed, under control, to the home signal.

"When the home signal shows the blade in a horizontal position, or a red light, an approaching train must stop before passing the signal.

"When the home signal shows the blade in a vertical position, or a white light, the train may proceed.

"At night each red and white light must be seen in its proper position or the train must stop.

"While a train, or any part of a train, is between the home signals, all traffic will be stopped on the crossing road by the operation of the interlocking apparatus. Trains having work to do, or required to occupy the track within these limits, must, upon the approach of a train of a superior class on the crossing road, move beyond the home signals.   Trains of the same class shall not be delayed necessarily.   By superior class of trains I mean a passenger train is superior to a freight, and one part of a train is superior to another if they are rated so, first, second, and third class.

"When all required signals indicate proceed, trains may pass over the crossing without coming to a full stop.
*   *   *

"Enginemen must be governed by signals.   When in a horizontal position, come to a full stop."

We also quote from plaintiff's brief as to the power of the towerman:

"Mr. Mills testifies:

"*Q.* Are you compelled on finding, of course the order board turned either way, are you compelled to obey that signal, the signal from that target, I mean?

"*A.* If it is wrong you are supposed to stop. It is your duty to obey the target, if it gives us the right we can go through; if it is turned against us we must stop. The same kind of target operates the same way for both roads. There are two of these targets, one south, one north of the depot on the Ann Arbor road, one east, and one west on the Wabash road, and each road is compelled to obey those orders. The man in the tower who operates that controls the operation of the road, of the cars. I have not the slightest doubt in the world that I saw that target turned.

"Claude Edwards testifies: I have tended the target at Milan. I quit in the forenoon of the day Mr. Stever met with his accident; had worked there tending the target for three months, worked for C. M. Debenham, agent at Milan. I worked for both companies, the Ann Arbor and Wabash, and they both paid me half, $20 each a month. I am well acquainted with Mr. Palmer. He took my place. Mr. Debenham hired Mr. Palmer. He is the agent of both roads. He hired me. He hired Mr. Palmer. He hires all the men there.

"Ansyl F. Palmer testifies:

"*Q.* Do you know what that red signal is?

"*A.* It is the danger signal.

"*Q.* What does it mean?

"*A.* It means 'stop.'

"*Q.* Has anybody under any circumstances any right to run that flag or the red light?

"*A.* No, sir.

"*Q.* And if he don't get the white light, and suppose you keep him there six or eight hours, have they any right to run it?

"*A.* All they have to do is the right to report you for holding them.

"*Q.* Have they the right to pass until it is taken down?

"*A.* No, sir.

"*Q.* Until it is down have they any right to run it?

"*A.* No, sir.

"Defendants' witness John A. Lisman testifies as follows: When no train has asked for signals or rails it

stands at block for both roads, east, west, north, and south. When the train passes, and uses the derail, it should be put back to block. And an engine could not get to the diamond without the towerman doing something to give it to my train. It is not possible with an interlocker to give it to one road without taking it from the other, not in my knowledge."

Plaintiff recovered a verdict, and to reverse the judgment entered thereon defendants prosecute this writ of error.

Plaintiff's counsel contend that under the evidence—

"The towerman, in discharging the duties assigned him, was the representative of both defendants. His duties in this case were not the duties of a telegraph operator, but the duties of a train dispatcher. No train could cross the interlocker without his permission, he would hold any train he saw fit, or send any train over the diamond he saw fit, and if any train attempted to pass across the diamond without his consent it would be derailed, and if he saw fit to retain a train the only relief the trainmen had was to report him to the companies. His acts, therefore, were the acts of the defendants, and if he was negligent it was the negligence of the defendants."

We are unable to assent to this conclusion. The same view was adopted by the circuit court in the case of *Lake Shore, etc., R. Co.* v. *Burtscher*, 8 Ohio Cir. Ct. R. (N. S.) 137. This view was rejected by the supreme court on appeal, and it was held that the towerman was the fellow-servant of the engineer. *Lake Shore, etc., R. Co.* v. *Burtscher*, 74 Ohio St. 523 (78 N. E. 1129). See, also, *Hydell* v. *Railway Co.*, 74 Ohio St. 138 (77 N. E. 1066). In our opinion, the duties of the towerman are more analogous to those of the local telegraph operator than to those of the train dispatcher, and the difference between him and a crossing switchman operating upon the ground and turning the switch lights by hand or giving signals with a lantern is one of degree and not of kind. The towerman, therefore, is ordinarily a fellow-servant of the engineer. *Graham* v. *Railway Co.*, 151 Mich. 629 (115 N. W. 993); *Dixon* v. *Railway Co.*, 147 Mich. 667 (111 N.

W. 200); *Pearsall* v. *Railroad Co.*, 189 N. Y. 474 (82 N. E. 752); *Tillson* v. *Railroad Co.*, 102 Me. 463 (67 Atl. 407); *Cleveland, etc., R. Co.* v. *Lawler*, 94 Ill. App. 36.

It is further contended by counsel for plaintiff, however, that, whatever the rule may be as to the relation between a towerman and an engineer in the employ of the same company, this case falls within the rule of *Kastl* v. *Railroad Co.*, 114 Mich. 53 (72 N. W. 28), where it was held that a switchman in the employ of a board composed of representatives of three railroad companies, to whose general control of a union depot, tracks, and yard the individual companies were subject, was not a fellow-servant of a car inspector employed by one of the companies. So far as this record discloses, the station agent was the joint agent of the two companies, employed to perform for them the usual duties of station agents, with no general powers or authority to prescribe rules for or direct or control the performance of the duties of the towerman other than as the power to discharge might incidentally affect such performance. The rules for the guidance of the towerman were prescribed by the companies and not by the station agent, and he was the employé of the companies and each of them, through the contract of hiring by the station agent for them. The mere power to hire and discharge employés does not constitute one a master or even the vice principal of the master. *Lepan* v. *Hall*, 128 Mich. 523 (87 N. W. 619); *Page* v. *Food Co.*, 142 Mich. 17 (105 N. W. 72). There was no such entire surrender of the management and control of the interlocker and signal system to the station agent as to render him the master of the towerman and bring this case within the principle of the *Kastl Case*.

The judgment is reversed, and a new trial ordered.

MONTGOMERY, OSTRANDER, MCALVAY, and STONE, JJ., concurred.