ROGERS *v.* PERE MARQUETTE RAILROAD CO.

RAILROADS—NEGLIGENCE—TRAIN DISPATCHER — OPERATOR — FEL-
LOW-SERVANTS.

> An engineer, injured in a railway wreck caused by a local ope-
> rator's mistake in transcribing a correct and proper order
> sent by defendant's train dispatcher, cannot recover, since
> the operator was his fellow-servant.[1]

Error to Wayne; Murfin, J. Submitted April 13,
1911. (Docket No. 16.) Decided May 8, 1911.

Case by Wilson I. Rogers against the Pere Marquette
Railroad Company for personal injuries. Judgment for
defendant. Plaintiff brings error. Affirmed.

*Dohany & Dohany,* for appellant.

*McPherson, Bills & Streeter,* for appellee.

BLAIR, J. Plaintiff, an engineer in defendant's em-
ploy, was badly injured on the morning of July 20, 1907,
in a collision of two trains at Salem, Mich. A special
passenger train was to leave Ionia on the morning of
July 20, 1907. It was known as an excursion train; its
destination being the city of Detroit. At 2:26 o'clock in
the morning of July 20th an order, known as "Order No.
31," was issued by the chief train dispatcher in the city of
Detroit, and sent to the operator at Plymouth, who tran-
scribed it and delivered it to the plaintiff. Plaintiff, in
proceeding westward with his train, was to be governed
by this special order. In transcribing the order the oper-

[1] Telegraph operator as fellow-servant of trainman, see note in 50
L. R. A. 429.
   Train dispatcher as fellow-servant, at common law, of train em-
ployés, see note in 7 L. R. A. (N. S.) 651.
   As to common employment generally, apart from statute, where
no question as to vice principalship arises, see note in 50 L. R. A.
417.

ator at Plymouth made a mistake, as a result of which a head-on collision occurred, and several passengers were killed and a number of others injured, and plaintiff received the injuries for which this action is brought. Plymouth is what is known as an initial point, and for the purposes of this case it is agreed that plaintiff was free from negligence, and that the operator at Plymouth was negligent, and that if this court holds that the operator at Plymouth, who made the mistake in transcribing the dispatch, was a fellow-servant of plaintiff, he is not to recover. If the operator at Plymouth was not a fellow-servant in receiving and transcribing the dispatch, then plaintiff is entitled to a judgment of $5,000.

The position of the plaintiff relative to the relation of the receiving telegraph operator to the trainmen, as stated in his brief, is as follows:

"A train order is a written document, the character of which is a matter of common knowledge to practically every one. Because of its extreme importance in modern railroading, it must be accurate in every detail. As we understand it, two important elements enter into the composition of a train order, namely, substance and form. Not only must it be accurate in substance, but it must be accurately formulated.

"A train order sent out by a chief dispatcher cannot be considered properly formulated until it is legibly and properly copied in writing upon paper by the operator who receives it. In so far as the substance of the particular train order in question is concerned, it originated in the mind of the chief dispatcher at Detroit some time during the night preceding the day of the accident, and he wired it to the operator at Plymouth at about 2:30 o'clock a. m. There is no doubt but that the chief dispatcher conceived in his own mind what is considered a safe and reliable train order, but until it was put in writing by the operator at Plymouth it lacked form and could carry no intelligence to the plaintiff. Without the aid and assistance of the operator, it could never have assumed either the form or effect of a complete order, and in no way could it have directed or controlled the operation of plaintiff's train. An imaginary schedule of stations along a particular line of railroad, with the hours at which

a train will arrive at and leave such stations, in the mind of a train dispatcher, does not constitute a train order.    Something further must be done before it can assume the form of a written document ready for delivery to the trainmen.    A chief dispatcher, standing alone and without the assistance of an operator, cannot prepare such an order for delivery.

" It is therefore plain that an operator at a station is a necessary adjunct of the dispatcher at headquarters in the making up of train orders.    The operator at Plymouth was merely the arm of the dispatcher at Detroit, giving form to an order, the substance of which originated in the mind of the dispatcher."

As we understand the record, there is no claim that the train dispatcher was personally guilty of any negligence in transmitting the order, or in failing to require the order to be repeated to him by the operator, or in receiving an incorrect response and neglecting to make correction. Upon this understanding of the record, we hold that the circuit judge did not err in deciding that the operator was a fellow-servant of the plaintiff.    *Moon* v. *Railroad Co.*, 143 Mich. 125 (106 N. W. 715, 108 N. W. 78); *Veit* v. *Railroad Co.*, 150 Mich. 358 (114 N. W. 233); *Graham* v. *Railway Co.*, 151 Mich. 629 (115 N. W. 993, 25 L. R. A. [N. S.] 326); *Stever* v. *Railroad Co.*, 160 Mich. 207 (125 N. W. 47).

The judgment is affirmed.

OSTRANDER, C. J., and BIRD, HOOKER, and STONE, JJ., concurred.