# Catawissa Railroad Company *versus* Armstrong.

*Liability of railroad company for injuries done to persons on their track. —Duty of persons on railroad track.—Concurring negligence discussed. —Liability for injury to employees on road.—Competency of witness for defendant in such cases.*

1. It is the duty of all persons on the track of a railroad, and rightfully there but in subordination to the right of passing trains, to exercise that care which prudence would suggest, measured by the standard of care that a prudent man would naturally adopt under the circumstances.

2. Therefore, where a track repairer was killed at night by the collision of a backing train of cars with a hand-car in which he with others, was, approaching the station at which the train had been standing, it was *held*, in an action by his wife to recover damages therefor, that it was error to instruct the jury, that if the deceased knew that the train was at the station he was *not* guilty of negligence in approaching it in a hand-car, unless he *knew* the train was in motion: for though the court might have declared it not negligence to *approach* the train, *at* the station, yet the instruction given, placed the question of negligence on the knowledge of the moving train

[Catawissa Railroad Co. *v.* Armstrong.]

brought home to the deceased, and not upon the degree of care, which under the circumstances, he should reasonably, as a prudent man, have exercised.

3. Though defendant's point, alleging it to have been negligence on the part of the deceased knowingly to approach a train, at the station, might properly have been negatived, yet the question of negligence should have been referred to the jury; a railroad company has the right to rely as well upon its own care, as upon the negligence of the party injured, and therefore the question whether, with proper care on his part, the accident might not have been avoided, should have been expressly presented to the jury.

4. Courts will not draw the line between contributing acts of negligence in determining their consequences: in such cases, neither party can recover from the other, for an injury resulting therefrom.

5. Hence, though the jury were instructed that if the deceased was guilty of negligence which contributed to the accident, the plaintiff could not recover, even if the defendant's employees were also guilty; it was error to add in connection that very slight negligence on the part of the defendant would not prevent a recovery, especially when the instruction was afterwards given, that there could be no recovery where the negligence was equal.

6. Where the deceased was in the sole employ of one railroad company, and the injury was caused by the cars of another company who had the right to run their trains over the other's road, the plaintiff is not precluded from recovery on the ground that her husband was in the same general employ with the defendant's servants; the rule that where several persons are in the same general employment, and one is injured from the carelessness of another, the employer is not responsible, is not to be extended beyond the limit of adjudged cases.

7. The engineer in charge of a colliding train is not a competent witness for the defendants, without a release.

ERROR to the Common Pleas of *Lycoming county*.

This was an action on the case, by Margaret Armstrong against The Catawissa Railroad Company, to recover damages for the killing of her husband, Michael Armstrong, through the alleged negligence, carelessness, and inattention of the conductor of a freight train belonging to the company. The main facts were these :—

The Catawissa Company, by an arrangement with the Philadelphia and Erie Railroad Company, have the right to use the road of the latter company and run upon it from Milton to Williamsport. Under this they are bound to obey the rules and regulations of the Philadelphia and Erie Company, and to run on their schedule of time. At the time this accident happened, Armstrong was in the employ of the Philadelphia and Erie Company.

Information had been given to Dennis McGuire, an employee of the company, on the 26th of November 1862, in the afternoon, that a rail was broken on the section of the road of which he had charge, some distance above Muncy Station. He took a hand-car and several persons with him, went down the road, and found the broken rail on Michael Mulligan's section or division. Having no claw, or instrument with which to draw spikes, he went on to Muncy Station, near which Mulligan lived. He there met Mr. Hawley, the agent of the company, who told him to flag the

[Catawissa Railroad Co. *v.* Armstrong.]

train, which he heard coming, at the time. The train came along, and he flagged it, and asked the engineer if he had heard of the broken rail. He said he was flagged below.

Michael Mulligan, Thomas Collins, and Michael Armstrong, all of whom were employees of the Philadelphia and Erie Railroad Company, then went down the road in a hand-car to Montgomery crossing. Armstrong went for a man named Lynch, who lived a short distance from this crossing. The hand-car was taken off at that place, and Armstrong signalled the train with a flag. The train stopped at the crossing, and Armstrong spoke with the engineer. The train then proceeded up to Muncy Station, and stopped there, when some freight was taken out of one of the cars, and placed on the platform on the passenger side of the road. After the freight was put off, the train was backed down some distance, at the rate of about three miles per hour. After the train had passed Montgomery crossing, the hand-car was again put on the road, and Michael Armstrong, Michael Mulligan, Martin Lynch, and Thomas Collins got on to it, and proceeded up the road, at about the speed at which a man would run, Lynch and Armstrong working the cranks. The collision which resulted in the death of Armstrong took place while the freight train was being backed down, at the speed mentioned, and the hand-car was coming up. The night was dark, and it was after 12 o'clock.

The plaintiff, in her declaration, alleged it to have been the result of the negligence, carelessness, unskilfulness, and default of the defendants and their servants and employees, and for want of due care and attention to their duty in that behalf, and without any default or negligence on the part of the said Michael Armstrong or the other employees of the said Philadelphia and Erie Railroad Company.

On the trial the defendant called as one of the witnesses the person who was engineer of the freight train when the accident occurred, who was objected to as incompetent, and rejected by the court. When the testimony was closed, the defendants' counsel requested the court to instruct the jury as follows:—

3. That if Armstrong knew, or had the opportunity of knowing, that the train of defendant was at the Muncy Station he was guilty of negligence in approaching the train in a hand-car, and thus occupying the track of the road, and therefore plaintiff cannot recover.

4. That Armstrong and the conductor of the train, being in the same general service, doing business under the same rules and regulations, the liability to injury was an ordinary risk against which the law furnishes no protection, and the plaintiff cannot recover.

5. That if the jury believe from the evidence that Armstrong

[Catawissa Railroad Co. v. Armstrong.]

was guilty of negligence, the plaintiff cannot recover, if McAulay the conductor also was guilty of negligence.

The court below, after stating the case, charged as follows :—

" In the exercise of their corporate rights, railroad companies are bound to act with care and attention, and to employ as engineers, contractors, and employees men who are competent to discharge the duties of their respective stations. This is necessary for the protection of the lives of those who travel on the road, and the protection of property put on the road to be carried to its place of destination. On the best conducted and managed roads, with skilful engineers and competent employees, accidents have happened and are constantly occurring. Care, caution, and prudence, on the part of those who travel on these roads and men who work upon them are also required.

" What is the negligence complained of in this case, and how far is this allegation supported by the evidence? First, that before the train backed no signal of an intention to do so was given, neither signal, whistle, or bell. Second, that in the caboose, or hindmost car in the train, there was no light, or, if there was, it was too dim to be seen by the persons who were approaching on the hand-car. Third, that there was no one stationed on the top of a car to signal the engineer.

[" This makes it necessary to inquire into the duty of those in charge of this freight train to signal before backing; for if it was their duty to do so, an omission to do it would be such negligence as would be sufficient to render the company liable unless there was such negligence on the part of Armstrong as would excuse them.]

" The third train rule is in these words : ' Passenger trains must always be drawn, not pushed, cases of accident, obstruction, or unavoidable necessity only excepted, and then only to the nearest side track. In every such case, and in backing any train, the conductor, or an experienced and trusty brakeman, must be stationed on top of the cars to signal, and in full view of the engineer ; where the track cannot be seen for half a mile, the speed must not exceed four miles per hour.' "

The court here referred to the evidence, and remarked to the jury that, having considered the conduct of the defendants, it would be their duty to consider the conduct of Michael Armstrong, whether it was prudent or careless and negligent; for the Supreme Court have decided that where both parties are equally careless and negligent there can be no recovery.

The court here read defendants' points, as above, and answered them as follows :—

" 3. If Armstrong knew, or had the opportunity of knowing, that the train of defendant was at the Muncy Station, he was not guilty of negligence in approaching the train in a hand-car,

[Catawissa Railroad Co. *v.* Armstrong.]

and thus occupying the track of the road, unless he knew the train was in motion.

"4. We cannot give you this instruction.

"5. If the jury believe Armstrong was guilty of negligence there can be no remedy, even if defendants' employees were. If he, by his conduct, contributed to the accident, his widow cannot recover. A very slight negligence on the part of Armstrong, and gross negligence on the part of the defendants, would not prevent plaintiff's recovery. When the negligence is equal, there can be no recovery.

"If from the evidence, all of which is submitted to you, you should be of opinion the plaintiff is entitled to recover, the next question will be how much? and this is a question not free from difficulty. Armstrong was a labouring man, in good health, receiving at the time of his death, about ninety cents a day, and was about forty-seven years old. How long he would have lived to support his wife and family if this accident had not happened, neither you nor this court can tell. He might have lived in the enjoyment of good health for some years, or been smitten down in a few years by death. You are to estimate the value of the life of Michael Armstrong, and his probable gains and accumulations, and award to his widow such damages as you, upon a careful and impartial examination of the evidence, may think she is entitled to recover. The Supreme Court have said, and we say to you, that it would be wrong to limit the value of a man's life by his probable accumulations."

Under these instructions, there was a verdict and judgment in favour of plaintiff for $4500. The defendants thereupon sued out this writ, and assigned for error the rejection of the witness offered by defendants, the answer given to the points propounded as above, and that portion of the charge printed above in brackets.

*George White*, for plaintiffs in error.

*J. & W. H. Armstrong*, for defendants.

The opinion of the court was delivered, March 28th 1865, by
THOMPSON, J.—The principal grounds of complaint in this case are, the answer of the court to the third and fifth points of the defendants below.

The third point was, "that if Armstrong *knew*, or had the opportunity of knowing, that the train of defendants was at the Muncy Station, he was guilty of negligence in approaching the train in a hand-car, and thus occupying the track. The plaintiff cannot recover."

A negative of this point, I cannot doubt, might have been

[Catawissa Railroad Co. v. Armstrong.]

correct. Where was the negligence or impropriety in approaching it, if AT the station? The advance towards it would not necessarily put it in motion, or excite it into action, like a wild beast. The fact of being on the road with a hand-car was no trespass. It was a machine necessarily used in the business of the road, the use of which road the defendants had by contract, and if it did not obstruct trains, it was otherwise lawfully on the road. It was made to be used there with the limitation that it was not entitled to the road at any specified times as trains are. The point might with propriety have been negatived, but the court went further than a negative, and introduced what may have been very prejudicial to the defendants, without sufficient authority to justify it. They said: "If Armstrong knew, or had the opportunity of knowing, that the train of the defendants' cars was at Muncy Station, he was NOT guilty of negligence in approaching the train in a hand-car, and thus occupying the track of the road, unless he *knew* the train was in motion." Granting, as has been done, that the court might have declared that it was not negligence to approach the train at Muncy Station, in the hand-car, was the qualification, in case it was in motion, properly put? It was not negligence, say the court, unless he *knew* it was in motion! This was putting the case, I think, far too favourably for the plaintiff, and just as far too unfavourably to the defendant. Analyzed, it was that, unless actual knowledge was brought home to the deceased of the motion of the train, he might advance, at the speed of a man running, (which was the testimony in regard to the motion of the hand-car), at the moment of collision, and not be guilty of negligence. Unless he actually knew the train was moving, he was not put upon the duty of taking care. Whatever he did was nothing against him, unless it could be shown he *knew* there was a superior force in motion, which might crush him. I think this a fair analysis of the instruction. A jury might well infer from this, that they might dispose of the question of negligence without any test but the absence of proof that those who managed the hand-car knew the train was in motion towards them. It seems to me this, although perhaps not intended, thrust aside as unimportant, all inquiry into the fact of means of knowledge to be afforded by signals on part of the agents of the company. If this was a proper instruction, it looks as if it left the defendants only the chance of proving the deceased negligent by proving actual knowledge of danger, by knowledge of the advancing train. This was more than the law requires. It is the essence of all the authorities, that it is a duty incumbent on all persons on the track of a railroad, although rightfully there, but in subordination to the paramount right of passing trains, to exercise that care which prudence would suggest, measured by the stand-

ard of care which a prudent man would naturally adopt in such circumstances. There is no such thing as regarding a reasonable being released from care in such circumstances; and nothing but the affirmation of the proposition, that a man is not bound to use care unless he actually knows of a special peril, can ever release him! The hand-car, in the case before us, a very inferior vehicle in point of power and strength, was on the road in a dark night—it was advanced rapidly along the track with a view to pass the train at the station, and in the attempt, neither going on to the siding, nor, so far as the testimony shows, stopping to ascertain if the train had passed on to the siding, comes in contact with the backing cars, and death ensues; was it a proper instruction in such circumstances to say, as *a matter of law*, that there was NO negligence in this, unless the deceased and his companions *knew* the train was moving? We do not think it was. The deceased was bound to omit no reasonable precaution to avoid accident. He must have known, as all know who are acquainted with the working of railroads, that trains at stations move to and fro, very frequently, in adding to or diminishing their trains, or in discharging or loading freight. The words of the learned judge seem clearly to imply that the necessity of caution in the particular instance was only to result from a knowledge of the moving train. The point might have been negatived, as already said; but more properly the question of negligence should have been referred to the jury. The defendants had a right to rest not only on their own case, but if that would not avail, then on the negligence of the deceased. The jury should have had the fullest opportunity of saying how the case stood, both grounds being considered; but under the answer, I cannot but think this was not allowed as fully as it should have been. The deceased was assuredly bound to look out for danger even if not notified of it, if there was reasonable grounds to suppose it existed. The very point of the error was in assuming that there was no danger in the circumstances of the case. That assumption by the deceased proved fatal, with or without his fault, but whether with proper care that result might have been avoided was the question for the jury. Was there negligence on part of the deceased, even if there was on part of the company, which contributed to the act? Or was it altogether the company's negligence? If so, the plaintiff was entitled to recover. If mutual negligence existed, she was not so entitled. This view was excluded, to some extent at least, by the instruction.

The answer of the court to the defendant's fifth point is also complained of, and with reason, I think. In the first place the judge charged, "if the jury believe that Armstrong was guilty of negligence, there can be no recovery, even if the defendant's employees were. If he (the deceased) by his conduct contributed

to the accident, his widow cannot recover." So far this was all right, and was a sufficient answer, but then he added, "very slight negligence on the part of Armstrong, and gross negligence on the part of the defendant, would not prevent plaintiff's recovery." The court was speaking, of course, of contributing negligence, as that was the only negligence that had any bearing on the case; in other words, of negligence in producing the disaster. There was error in this, unless we can see clearly that it was neutralized by what preceded it. How is it possible to ascertain this? Can we suppose it made no impression? The jury heard it—it had meaning, and was given to guide them to what principles they were bound to apply the facts, and it was almost the last words that fell on their ears in closing this part of the instructions. It will not do to hope or conjecture that a false rule will do no evil, because a true one also was given. To a court it would have been harmless, but how was a jury to say which was right and which wrong? Their training, education, and pursuits unfitted them to judge; and besides, as good jurors they were bound to act on the instructions of the court, and not their own opinions of the law.

We have repudiated, oftentimes, attempts to draw the line between contributing acts of negligence in fixing their consequences; and have always held that in such cases neither party can recover from the other. This is the rule of the common law, as old as the common law itself, and rests on the solid reason that one man has no right to recover from another for consequences attributable in part to his own wrong. In Little Schuylkill Navigation Company *v.* Norton, 12 Harris 465, the chief justice of this court most forcibly presented the true doctrine, when he said, "the law has no scales to determine in such cases whose wrongdoing weighed most in the compound that occasioned the mischief." Attention to this principle, thousands of times repeated, in different forms, would have saved the error here. But the error did not stop at this point, at which slight and gross negligence were compared, and the former pronounced immaterial; the thought seemed to grow, until it culminated in the promulgation of a conclusion, that "where the negligence is *equal* there can be no recovery." This was a negative pregnant, and we can hardly doubt that it was received by the jury to mean that nothing but equality in blame or negligence would prevent a recovery by the plaintiff. This, I think, must have been the case, as in the preceding sentence it was explicitly said that slight negligence would not prejudice a recovery. While it was literally true that equality of negligence would defeat a recovery, it was equally true that less than that—that any negligence of a contributing character would have the same effect. In regard to these positions it is quite appropriate to

[Catawissa Railroad Co. *v.* Armstrong.]

say the law has no scales to determine which weighed most with the jury, that portion of the answer which was right, or that which was certainly wrong. They both resulted from a conscientious discharge of duty by the judge, and were accompanied by equal solemnity and consideration. In such a category the only safe course to pursue is, to send the case to be re-tried as unmixed of error as care may permit. On the two grounds, therefore, of this opinion we reverse this case.

We do not think the plaintiff was precluded from recovery on the ground that her husband was in the same general employ with the defendant's servants. We do not think he was. He was not the servant of the Catawissa Company. He had nothing to do with them, or they with him. His employment, at the moment of his death, was in obedience to the Philadelphia and Erie Railroad Company. He was keeping the track in repair for them. That they permitted others to use their road did not make him the servant of the latter. I am not for extending the doctrine further than our cases have extended it. I am for leaving it there. It was before us in the case of O'Donnel *v.* The Allegheny Valley Railroad Company, at the last term of the Western District, and in that decision we did not extend the doctrine. We think no error occurred in ruling this point.

We also arrive at the same conclusion in regard to the next and last point. We think, on authority, that the engineer was not a competent witness without a release. The following cases are exactly to this effect: 8 S. & R. 124; 2 Jones 81; 5 W. & S. 28; 1 Harris 160. These are in addition to the elementary citations on the paper-book of the plaintiff in error. It was his duty to do the very thing most strongly insisted upon as negligence on the part of the company, namely, to give the moving signal by sounding the whistle. If permitted to swear in order to disprove this, he would be purging himself of fault, and relieving himself of liability over. The law regards this as sufficient to disqualify, whether on the score of interest or policy, or both, I will not now undertake to discuss. There was no error in this ruling.

> For the reasons given on the first two points noticed in this opinion the case is reversed, and a *venire de novo* is awarded.

WOODWARD, C. J., dissented from the ruling of the first point.