MILTIMORE and others vs. THE CHICAGO & NORTHWESTERN RAILWAY COMPANY.

NEGLIGENCE. *Common carrier held not guilty of, on facts of case.*

Plaintiffs, wishing to send a wagon from Janesville to Chicago by defendant's road, determined not to have it taken apart so as to be transported by a box car, but to ship it upon an open platform car by a night train which left Janesville at 9:15 P. M. When their agent bargained for the car, he was told by defendant's agent that if he got the wagon to the freight depot before 5 P. M., they would help him load it, but if later, he would find his car by the freight house. He reached the depot late, but met two of the defendant's workmen going away, who went back and aided him in loading the wagon on the car, he himself taking (as it was understood he would do) the entire charge and responsibility of such loading, and of securing the wagon to the car, and using such appliances as he thought proper for the latter purpose, without control or interference of any one. The wind blew very hard a sufficiently long time before the train left, to enable plaintiffs to countermand their order for sending the wagon by that train, or to have it further secured. On the way to Chicago, the wagon (which was a covered one) was blown from the car. In this action for the consequent damages: *Held*, that the facts above stated do not support a finding that defendant was guilty of negligence in attempting to transport the wagon to Chicago without further securing it; and a judgment against the company is reversed.

APPEAL from the Circuit Court for *Rock* County.

Action for damages alleged to have been caused by the negligence of the defendant company in transporting a wagon for the plaintiffs, on its cars from Janesville to Chicago. The answer denied negligence, and alleged a special contract that the wagon should be transported wholly at the owners' risk in respect to the cause from which the damage resulted.

The evidence showed the facts to be, that the plaintiffs, by one Ripley, their agent, applied for transportation of the wagon in an open or platform car, as they desired it shipped without taking it apart; that the price was agreed upon, and the company agreed that it should be sent on the train which was to leave the same evening at 9.15 o'clock, provided it was received in time, and that, if there was a flat car in the yard, it should be placed where he could run it on; that Ripley applied to the employee of the company, whose duty was to make up trains, for a car, who informed him that they would have a car placed for him, and, if he got the wagon there before 5 o'clock, they would help him load the wagon upon the car; that he took the wagon up to be loaded a little after 5 o'clock. The employees of the plaintiff loaded it upon the car. Two of the employees of the company went back, at Ripley's request, after hours, and helped load it; and one suggested that he take off the wheels, but Ripley said he could fasten them so they would not roll, and tied the wheels, and nailed down blocks upon the floor to keep it from rolling. The company gave a receipt for the wagon which contained the agreement that the company should not be "responsible for loss or damage to any  *  *  *  article whose bulk rendered it necessary to transport in open cars,  *  *  *  unless it can be shown that such damage or loss occurred through negligence or default of the agents of the company." The train, with the car containing the wagon, left for Chicago that evening while a high wind was prevailing. The wagon, being in the condition in which the plaintiffs' agent had left it, was blown off from the car in transit, and injured.

The issue was tried by the court, who found that the defendant was negligent in removing the wagon, during the prevalence of the high wind, without taking precaution to secure it to the car, so as to prevent it from being blown off; and that by reason of such negligence the injury occurred. From judgment on the finding the defendant appealed.

*Wm. Ruger*, for appellant, argued, that the proximate cause of the damage was the act of God; that the company were relieved from liability by their contract orally made, and by that expressed in the receipt; that the want of precaution, if any, was that of the plaintiffs; citing Angell on Law of Carriers, §§ 154–5; Story on Bailment, § 489, 492 a, 511, 516. Pierce on Am. R. R. Law, 409; *Klauber v. Express Co.*, 21 Wis., 24; *Congar v. Railway Co.*, 24 id., 161; *Railway Co. v. Reeves*, 10 Wall., 176; *Betts v. F. L. & T. Co.*, 21 Wis., 80; *Gleason v. Transportation Co.*, 32 id., 87; *Railway Co. v. Dunbar*, 20 Ill., 627; *Harris v. Railway Co.*, 20 N. Y., 233; *Rixford v. Smith*, 52 N. H., 359; *Knowles v. Railway Co.*, 38 Me., 55; *Swetland v. Railway Co.*, 102 Mass., 282; *Chevaillier v. Patton*, 10 Texas, 344; *Ship Howard v. Wissman*, 18 How., (N. S.), 231; *Curtis v. Railway Co.*, 18 Wis., 312; *Aldrich v. Railway Co.*, 100 Mass., 31.

*Cassoday & Carpenter*, for respondents:

1. When the wagon was placed upon the car, it at once passed into possession and under exclusive control of the company, which at once became charged with the same care and responsibility, as if it had been delivered into their warehouse for transportation. *Merriam v. Hartford & N. H. R. R. Co.*, 20 Conn., 354; *Ill. Cent. R. R. Co. v. Smyser & Co.*, 38 Ill., 354. 2. And they became at once responsible, as common carriers, for all loss, injury and damage, during transportation, except such as should be occasioned by the act of God, or the public enemy. 2 Greenl. Ev., § 219; Redfield on Carriers, § 24; *McArthur v. Sears*, 21 Wend., 190; *Van Winkle v. The S. C. R. R. Co.*, 38 Ga., 32; *Laveroni v. Drury*, 16 Eng. Law & Eq., 510. 3. By

the act of God is meant a natural necessity, which could not have been occasioned by the intervention of man, but proceeds from physical causes *alone.*    2 Greenl. Ev., § 219 and note 7; *Forward v. Pittard,* 1 Term R., 27, 33.    4. The exception, to the act of God, or inevitable accident, is in reality limited to accidents which come from a force superior to all human agency, either in their production or resistance.    It must be a force against which no human foresight or sagacity could guard; hence where negligence of a carrier exposes property to injury, which it might otherwise have escaped, the carrier is responsible, notwithstanding it occurred through combined agency of carrier's negligence and inevitable accident.    Redfield on Carriers, §§ 24, 25, 26, 27, 28 ; *Read v. Spaulding,* 30 N. Y., 630; *Michaels v. N. Y. Cent. R. R. Co.,* id., 564, 571; *Colt v. McMechen,* 6 Johns., 160 ; *Merritt v. Earle,* 29 N. Y., 115 ; *N. B. S. & C. Co. v. Tiers,* 4 Zabr. (N. J.), 697, 700 ; *Sprowl v. Kellar,* 4 S. & P. (Ala.), 386 ; *Jones v. Pitcher,* 3 id., 135 ; *Lamb v. The C. & A. R. & T. Co.,* 2 Daly (N. Y.), 454, 463.    5. The company having received the wagon into their possession, and under their exclusive control, prior to the time for starting train ; and its position on car, and the manner of its being attached thereto, being actually known to the conductor of the train, and the men who made up the same, prior to starting; and the fact of the sudden rising of the wind, after receiving possession and prior to starting, being apparent to observation, and known to the defendants, *they became liable,* as common carriers, *for the exercise of their judgment,* as to the manner of carrying it, and as to whether it was sufficiently and securely attached to the car, and as to whether it was safe or unsafe to transport the same that night, in the condition in which it was when placed upon the car, and in view of the new circumstances which had arisen since they received it.    Redf. on Car., § 34; *Peet v. C. & N. W. R. Co.,* 20 Wis., 594; *Strohn v. Detroit & Mil. R. Co.,* 23 id., 126, 131; *Railroad Company v. Reeves,* 10 Wall., 176, 191. 6. A carrier is bound to the most exact diligence, as much to

avoid danger which may be reasonably apprehended in the future, as to rescue the property from present and imminent peril. *Klauber v. American Ex. Co.*, 21 Wis., 21; *Empire Trans. Co. v. Wamsutta O. Co.*, 63 Pa. St., 14; *Read v. Spaulding*, 30 N. Y., 630, 639–642; *Michaels v. N. Y. Cent. R. R. Co.*, id., 564; *Merritt v. Earle*, 29 id., 115, 117–119; *N. B. S. Co. v. Tiers*, 4 Zab. (N. J.), 697, 700; *Sprowl v. Kellar, supra; Jones v. Pitcher, supra; Lamb v. R. & T. Co., supra; Bason v. The Charleston Steamboat Co.*, 1 Harp. (S. C.), 171; *Campbell v. Morse*, id., 301; *Williams v. Grant*, 1 Conn., 487, 491, 493; *Crosby v. Fitch*, 12 id., 410.

COLE, J.    The learned circuit judge found from the evidence that the defendant company was guilty of negligence in removing the wagon from Janesville, the place of shipment, and in carrying it forward toward Chicago, its point of destination, without taking the precaution to secure it to the car, so as to prevent it from being thrown from the car by the violence of the wind prevailing at the time.    Upon this ground the company was held liable for the injury to the wagon upon being blown off the car.

We feel constrained to dissent from this view of the case. The evidence shows, beyond all doubt or question, that the plaintiffs themselves chose an open or platform car upon which to transport the wagon to Chicago.    They did not wish to have the wagon taken apart so that it could be transported in a box car, but chose the platform car, upon which the wagon could be carried standing, as the cheaper mode of conveyance.    The company certainly was not at fault for this manner of transporting the wagon.    The evidence clearly shows that the plaintiffs assumed the labor and responsibility of loading the wagon.    Ripley was told when he bargained for the car, by the agents of the company, that if he got the wagon to the cars before five o'clock, they would help him load it, but if he got there after that time, he would find his car by the freight

house platform, upon which to place the wagon.  He got to the freight depot late, but met a couple of the workmen coming away, who went back and aided him in loading the wagon. But Ripley himself took the entire charge and responsibility of loading the wagon, as it was understood he would do, and of securing it to the car.  Whatever means and appliances he deemed necessary and proper to be used to secure the property while in transit, he used, or might have used, without the control or interference of any one.  The state of the weather, the nature of the property, its exposure to violent winds, he should have considered and provided for.  It seems to us there is no reason for saying that the company was guilty of negligence, and did not take due precautions to secure the wagon, in view of the established fact that the plaintiffs undertook to attend to these matters themselves.  The company received the property for transportation, loaded and secured as the plaintiffs saw fit to load and secure it; and why should negligence be imputed to it for not taking precautions to guard against the plaintiffs' want of care ?  It is said the company was exceedingly careless and negligent in attempting to carry this covered wagon at the time and in the manner it did, without making any effort to attach the same more firmly to the car.  But the obvious answer to this argument is, that the plaintiffs themselves assumed the risk and responsibility of loading and securing the wagon, and the company was not called upon to see that they had properly performed their duty in that regard.  The plaintiffs had ordered that the wagon should be sent by the night train, and the agents of the company had agreed to take it, if loaded. According to the testimony of Carter, one of the plaintiffs, the wind blew very hard between eight and nine, while the train on which the wagon was to go did not leave Janesville until 9:15.  There was ample time to countermand the order to ship the wagon that night, or to see that it was so secured that it could not be blown from the car by the violence of the wind. It seems to us that whatever negligence there was in securing

the wagon, must be imputed to the plaintiffs.   The case is not
distinguishable in principle from *Betts v. The Farmers' Loan &
Trust Company*, 21 Wis., 81, and the decision there made is
controlling here.   There the owner of cattle shipped by rail-
road, who had undertaken to put them in the car, knew that
the door of the car was in an unsafe condition, but neglected to
inform the station agent, who was ignorant of the fact; and it
was held that he could not recover for injuries received by the
cattle in escaping from the car in consequence of such defect.
So, under the circumstances of this case, it seems to us, the
company was not obliged to take further precautions to fasten
or secure the wagon on the car.   The plaintiffs had taken upon
themselves that care and responsibility, and if they failed prop-
erly to secure it against the violence of the wind, and it was
injured, the loss is attributable to their fault.

It follows from these views that the judgment of the circuit
court must be reversed, and the cause remanded with direc-
tions to dismiss the complaint.

*By the Court.*—It is so ordered.