## CHICAGO, R. I. & P. RY. CO. v. McCULLEY.

No. 1170.   Opinion Filed November 14, 1911.

(120 Pac. 279.)

1.     TRIAL—Taking Case or Question from Jury—Direction of Verdict.   The question presented to a trial court on a motion to direct a verdict is whether, admitting the truth of all the evidence which has been given in favor of the party against whom the action is contemplated, together with such inferences and conclusions as may be reasonably drawn from it, there is enough competent evidence to reasonably sustain a verdict, should the jury find in accordance therewith.   Where the evidence is conflicting, and the court is asked to direct a verdict, all facts and inferences in conflict with the evidence against which the action is to be taken must be eliminated entirely from consideration and totally disregarded, leaving for consideration that evidence only which is favorable to the party against whom the motion is leveled.

2.     RAILROADS—Operation—Liability for Injury.   On October 30, 1908, a firm in Kansas City, Mo., consigned to one Tobin, at H., Okla., some billiard and pool tables.   The shipment was made in car No. 32372, belonging to the Frisco Railroad Company, and was loaded by that company and shipped the entire distance over its line, arriving at Holdenville on November 4, 1908, where it was, by the conductor of the said Frisco Railway, placed on a switch near the depot, used jointly by the Frisco and Rock Island Roads; that plaintiff, who was a drayman of several years' experience, on the 7th day of November, was employed by the consignee to unload the billiard tables from said car; that the consignee gave him the bill of lading for the same; that he called at the depot and asked for the shipment; that he did not know which road brought the shipment to Holdenville, or which one located the car at the point where he found it, nor who loaded the same, nor whose track it was on, although he thought it was on the Rock Island track, but admitted that the track was used by both roads for the purpose of placing cars to be unloaded;

that when he presented the bill of lading to the station agent, the latter told him to get the platform man to show him the car; that he spoke to the platform man, and was directed by him to the car; that he found the tables, together with other merchandise, therein; that he did not observe anything wrong in the manner in which the car was loaded; that, in removing one of the slabs of stone which formed the top of a billiard table, it fell over and upon him and broke his leg; that the agent and other employees at the depot were acting, in dual capacity, for both roads; that the business of the roads was conducted separately, and that when the agent was handling Frisco business he was acting as a Frisco servant, and while transacting Rock Island business he was a Rock Island servant, and that the Rock Island Company had nothing whatever to do with the loading, shipment, location, or unloading of the car; that it received nothing from the same in any manner, and had nothing to do with it at any time; that all the records at the depot concerning the same showed that it was Frisco business; that the Rock Island had no interest in or control over the Frisco Company, and was not bound in any way to answer for the faults or negligence of the Frisco agents. **Held**, that the Rock Island Company owed no legal duty to the plaintiff in the premises, and that plaintiff had no cause of action against said Rock Island Company for damages, by reason of an injury received on account of the negligent manner in which the car was loaded; and **held**, further, that the court, under the facts of this case, erred in not directing a verdict in favor of the defendant.

(Syllabus by Robertson, C.)

*Error from District Court, Hughes County; John Caruthers, Judge.*

Action by Bert McCulley against the Chicago, Rock Island & Pacific Railway Company. From a judgment for plaintiff, defendant brings error. Reversed, and cause dismissed.

*C. O. Blake, H. B. Lowe, R. J. Roberts,* and *Willmott & Wilhoit,* for plaintiff in error.

*Warren & Miller* and *Walker & Fancher,* for defendant in error.

Opinion by ROBERTSON, C. On November 21, 1908, defendant in error (hereinafter designated as plaintiff) filed his petition in the district court of Hughes county against the Chicago, Rock Island & Pacific Railway Company, and sought thereby to recover the sum of $1,999.90, as damages for personal injuries, alleging, in substance, that he was a drayman of several

years' experience, engaged in the business of unloading and transferring freight from defendant's cars to consignees in the city of Holdenville, and that on said day defendant placed on its tracks at Holdenville a car loaded with merchandise, and containing, among other things, billiard and pool tables to be unloaded and delivered to consignees, and that plaintiff, with the knowledge, consent, license, permission, and at the instance, invitation, and request, of defendant, went into said car for the purpose of unloading and transferring said freight, and that defendant had dangerously, negligently, and carelessly set up against the side of said car some heavy stone slabs, which were parts of the billiard and pool tables, and had failed to provide props or fastenings to prevent said stone slabs from falling; that crates and boxes were negligently and carelessly, and in a reckless manner piled up and placed on top of said stone slabs, and that said slabs and crates and boxes were so placed and arranged that only the weight of said crates and boxes kept said slabs in an upright position; that in unloading said freight it was necessary to remove said crates and boxes, and when plaintiff removed said crates and boxes the said slabs fell over and onto said plaintiff and knocked him down, and bruised, mangled, and wounded plaintiff in the following particulars, to wit, plaintiff's left leg was crushed, mangled, and broken between the knee and ankle, and he was bruised and injured on other parts of his body, and plaintiff was thereby permanently injured, and was thereby rendered unable to perform physical labor, and was disfigured and crippled for life.

Defendant filed a general denial for its first defense, and as a second defense, among other things, avers that if such injury and damage occurred to plaintiff it was the result of the carelessness and negligence of plaintiff and his agents. There was a trial to a jury, and verdict and judgment for plaintiff for $700, from which judgment the defendant appeals.

After plaintiff had rested, the defendant interposed a demurrer to the evidence, which was overruled by the court, to which ruling the defendant at the time excepted, and when all

the evidence was in and the case was closed, the defendant moved to direct a verdict in its favor, which motion was denied, and the defendant in its brief relies upon these two rulings of the court for a reversal of the judgment.

From the evidence it clearly appears that the St. Louis & San Francisco Railroad Company and the Chicago, Rock Island & Pacific Railway Company used the same depot at Holdenville, and that the same employees and agents handled the business of both roads. For convenience, the St. Louis & San Francisco Railroad Company will hereinafter be designated the Frisco, and the Chicago, Rock Island & Pacific Railway Company the Rock Island. On October 30, 1908, the Brunswick-Balke-Collander Company, at Kansas City, Mo., consigned to one W. J. Tobin, at Holdenville, some billiard and pool tables; that the shipment was made in car No. 32372, belonging to the Frisco Company, and that the shipment was made entirely over said road, and when the car arrived at Holdenville on November 4, 1908, it was, by the conductor of the said Frisco Company, placed on a switch used by both roads near the depot; that plaintiff, on the 7th day of November, 1908, was employed by the consignee, W. J. Tobin, to unload the billiard tables from said car; that Tobin gave him the bill of lading for the tables; that he called at the depot and asked for the same; that he did not know which road brought the shipment to Holdenville, nor which one located the car at the point where he found it, nor who loaded the same, nor whose track the car was on at the time of the accident, although he thought it was on the Rock Island track, but admitted that the track was used by both roads for the purpose of placing cars to be unloaded; that when he presented the bill of lading to the freight agent the latter was busy, and told him to get the platform man to show him the car, and also to have him help unload the same; that he spoke to the platform man, who directed him to the car; that he backed his wagon up to the car, and opened it from the north side; that the car was standing on the track running east and west, and he found the tables, together with the other merchandise, therein; that the stone

slabs, which formed the tops of the billiard tables, were standing on edge, crated, on the south side of the car, near the door, leaning against the wall (Record, page 43); that he came into the car from the north side; that the space between the slabs and the north side of the car was filled with other merchandise; that he began to unload the car at the door where he entered; that he took out all the goods until he got to the slabs of stone; that there were some crates of light stuff on the top of the slabs, which he and his helper picked up, whereupon the slabs fell upon and injured him; that the only thing tending to hold the slabs up at the time the accident occurred, as plaintiff testified, aside from the fact that they were leaning to the south, was the crate of goods on the top, which he was then lifting off; that all the other goods to the north of said slabs had by that time been by him removed; that he did not see the slabs falling until they struck him; that he did not notice anything wrong or peculiar about the way the goods were loaded when he entered the car, and that he had been engaged as a drayman doing such work for several years; that when he first went into the car he made no examination as to the manner in which the goods were loaded; that the slabs were about four feet long and three feet wide, and when standing on edge, as they were when the accident occurred, were about as high as the table; that the agent and other employees at the depot were acting for both roads; that the business of the two roads was conducted separately, and that when the agent was handling Frisco business he was acting as agent for the Frisco, and when looking after the business for the Rock Island he was its agent; and that plaintiff knew the dual capacity in which they acted, and then he sued the defendant company, for the reason that the car was standing on what he supposed to be a Rock Island track at the time of the accident.

We will consider the two assignments raised by plaintiff in error in its brief together, inasmuch as they involve practically the same questions. It appears from the record that the only thing defendant had to do with the transaction in question was that the car, in which the accident occurred, at the time of the

accident, was standing on a switch which was used jointly by the two railway companies, and that the bill of lading was presented by plaintiff to the joint agent of said railways, who directed plaintiff to the car containing the billiard tables, and told him to get the tables from the car. We have carefully examined the entire record, and find this to be all that the Rock Island Company had to do with the accident. The shipment originated at Kansas City, Mo. The tables were loaded in a Frisco car, shipped the entire distance to Holdenville over the Frisco road, was by the Frisco conductor placed on a switch near the joint depot, which switch was used indiscriminately by both companies to place loaded cars on, that they might be unloaded, and was controlled as much by one company as the other. The agents who handled the shipment at Holdenville were Frisco agents; that they acted for the Frisco road when handling Frisco business, although they also acted for the Rock Island road when transacting Rock Island business; the Rock Island Company had nothing to do with this shipment, directly or indirectly, nor did it receive any money from the said shipment on account of freight, storage, or other charges.

The only reason why plaintiff sued defendant company was, "Because I supposed it [the car] was on the Rock Island tracks." (Record, page 34). That certainly was the only reason; leastwise there is none other apparent of record.

Plaintiff alleges in his petition:

"That on the 7th day of November, 1908, said defendant placed on its tracks at Holdenville, Okla., a car loaded with goods, wares, merchandise, billiard and pool tables, and other freight to be unloaded and delivered to consignees at Holdenville; that plaintiff, with the knowledge, consent, license, permission, and at the instance, invitation, and request, of defendant went into and upon said car, for the purpose of unloading and transferring said freight from said car to the consignees at Holdenville; that a part of said freight consisted of stone slabs, parts of pool and billiard tables, about three feet in length, three feet in width, and four inches in thickness, and which were very heavy; that said defendant, by its agents and servants, had dangerously, negligently, and carelessly set up against the side of said car

said stone slabs, and had negligently and carelessly failed to properly or at all secure said slabs, and had negligently and carelessly failed to provide props or fastenings to prevent said .stone slabs from falling; that crates and boxes were negligently and carelessly and in a reckless manner piled up and placed on top of said stone slabs, and that said slabs and crates and boxes were so placed and arranged that only the weight of said crates and boxes kept said stone slabs in an upright position," etc.

We have been unable to find a word of testimony in the record tending in the slightest degree to sustain these allegations. The defendant had nothing whatever to do with the loading of the car; same being loaded by the Frisco at Kansas City, and having been hauled by the Frisco over its own line to Holdenville, and placed by it on its track. All the records of shipment, as well as the bill of lading and expense bill and the conductor's switch record, show that the Rock Island Company never, at any time, directly or indirectly, remotely or otherwise, had anything whatever to do with the loading of the car, the transporting, or the locating of the same upon the switch at Holdenville.

At the close of plaintiff's testimony, he asked permission to amend his petition by adding to paragraph 3 thereof the following words, to wit, "or by accepting and receiving said car so loaded, and assuming control and dominion over it, and the inviting plaintiff to go upon and into it," which request was denied by the court, and, as we think, properly, too; for there was at that time, after plaintiff's evidence was all in, not a word that tended in any way to show that defendant had ever accepted or received said car, or that it had ever in any manner assumed control or dominion over it; in fact, the contrary appears, and is established by the record beyond any question. The trial court knew this to be true, and, knowing that the testimony of plaintiff was all in, and that he had closed his case, denied the permission to amend the petition, for that the proposed amendment did not tend in any wise to conform the pleadings to the proof; nor did plaintiff ask leave or offer to furnish any additional proof of the allegations of his proposed amendment.

"The permitting or refusing amendments to pleadings is a matter of sound judicial discretion of the court." (*Jantzen v. Emanuel German Baptist Church,* 27 Okla. 476, 112 Pac. 1129; *Mitchell et al. v. Ripley & Bronson,* 5 Kan. App. 818, 49 Pac. 153.)

The fact that the car had been placed on the side track by the Frisco Company, and that track was used jointly by both companies, that the agent showed plaintiff where it was located, that said agent was employed by both companies jointly, did not create any liability against defendant company; nor does it show in any wise that defendant was under any obligation or owed any duty whatever to plaintiff.

Before the Rock Island Company can be held liable to plaintiff, it must appear that it was under some legal duty to him, which it failed to discharge. *Railroad Co. v. Griffin,* 100 Ind. 221, 50 Am. Rep. 783; *Railway Co. v. Barnhart,* 115 Ind. 408, 16 N. E. 121; *Davis v. Society,* 129 Mass. 371, 37 Am. Rep. 368.

Admitting, for the sake of argument only, that the defendant placed the car on the switch, and that the agent who invited plaintiff to enter said car was acting for the Rock Island Company, would such a state of facts entitle plaintiff to recover as against the defendant? We think not. The rule that, when the consignor loads freight upon a car, or packs articles for shipment, the carrier which receives the car as loaded, or the package as prepared, is not liable for damages which arise from the defect in the loading or packing, is well settled.

*Gulf, etc., Ry. Co. v. Wittnebert,* 101 Tex. 368, 108 S. W. 150, 14 L. R. A. (N. S.) 1227, 130 Am. St. Rep. 858; *T. & P. Ry Co. v. Klepper* (Tex. Civ. App.) 24 S. W. 567; *Ross v. Troy & Boston Ry. Co.,* 49 Vt. 364, 24 Am. Rep. 144; *Miltimore v. C. & N. W. Ry. Co.,* 37 Wis. 190; *McCarthy v. L. & N. Ry. Co.,* 102 Ala. 193, 14 South. 370, 48 Am. St. Rep. 29; *Cohn v. Platt,* 48 Misc. Rep. 378, 95 N. Y. Supp. 535; *Western Ry. Co. v. Harwell,* 97 Ala. 350, 11 South. 781; *Klauber v. Am. Ex. Co.,* 21 Wis. 21, 91 Am. Dec. 452.

These authorities establish the proposition that it is not the duty of the railroad company that receives from the owner, or from another railroad company, a loaded car, to make an inspection of the manner of the loading, when the defect cannot be discovered by an external examination.

"The railroad company in the capacity of a common carrier, not being liable for property lost under like circumstances, how can it be that a railroad company, with regard to the same freight, would be under obligation to make an inspection, in order to protect persons in the employ of the consignee when unloading the car? The only connection that the railroad company had with the unloading of the car was to place it in a proper position to be unloaded, and, in doing so it would have been liable for any injury which might have occurred through negligence on its part in performing that duty. But it was in no sense bound to see that the contents of the tank were in proper condition for unloading * * * As we have seen, no such duty of inspection rested upon the railroad company with regard to loaded cars received from another road, either to secure the freight, or protect its own servants while operating the train. We have found no precedent for holding that the railroad company owed such duty to the consignee; nor do we know of any rule of law that would support such a conclusion." (*Gulf, etc., Ry. Co. v. Wittnebert,* 101 Tex. 368, 108 S. W. 150, 14 L. R. A. [N. S.] 1127, 130 Am. St. Rep. 858.) ·

See, also, to the same effect, *Brady v. Chicago, etc., Ry. Co.,* 114 Fed. 100, 52 C. C. A. 48, 57 L. R. A. 712; *Railroad Co. v. Craft,* 69 Fed. 124, 16 C. C. A. 175; *Kastl v. Railroad Co.,* 114 Mich. 53, 72 N. W. 28; *Phillips v. Railroad Co.,* 64 Wis. 475, 25 N. W. 544; *Sawyer v. Railroad Co ,* 27 Vt. 370; *Zeigler v. Railroad Co.,* 52 Conn. 543, 2 Atl. 462; *Railroad Co. v. Armstrong,* 49 Pa. 186; *Philadelphia W. & B. R. Co. v. State,* 58 Md. 372.

Thus, it is clearly seen that, looking at the case from this standpoint, there was no duty owing to the plaintiff by the defendant; that defendant, having nothing to do with the loading, transporting, or locating of said car on the switch, and nothing whatever to do with the unloading of same, all of which was done by a wholly different and separate company, cannot be held liable for the injury which plaintiff received. Plaintiff does not

charge in his petition, nor did the court instruct the jury, that the Rock Island Company owned or in any manner controlled the Frisco Company, nor that the Rock Island Company was responsible for the acts of the employees of the Frisco Company.

But he does charge that it was the careless and negligent manner of loading the car by the *defendant*, and then later, at the trial, he seeks to charge liability on account of defendant accepting and receiving said car so loaded, although the court properly refused to permit this, because it nowhere appeared in the evidence that the Rock Island Company, or any agent for it, ever, at any time, accepted or received the car, or assumed control or dominion over it, or, directly or indirectly, invited plaintiff to enter into and upon the same.

The only ground by which plaintiff seeks to hold defendant liable, therefore, seems to be that the agent who told plaintiff to go into the car was the agent of the defendant company. This, even though true, did not create a liability against defendant and in favor of plaintiff under the facts of this case.

But, was the agent acting for the defendant in this particular, simply because he was employed by both companies? We think not. The undisputed and admitted evidence shows that one set of employees transacted the business of both companies at Holdenville; that both companies used the same depot and the same side tracks for storing freight cars to be unloaded; that when the employees were working for the Frisco they were Frisco servants, and when transacting Rock Island business they were Rock Island servants; that the plaintiff was well acquainted with the conditions at the depot, and knew that the bill of lading called for a shipment over the Frisco, and that said shipment came in a Frisco car; and that said car at the time he entered it was standing on a track used by the Frisco Company.

In *A., T. & S. F. Ry. Co. v. Cochran*, 43 Kan. 225, 23 Pac. 151, 7 L. R. A. 414, 19 Am. St. Rep. 129, the Supreme Court of the state of Kansas denied a recovery in a case similar to the one at bar. That action was brought by Cochran, administrator of the estate of John M. Gibson, deceased, and alleged in sub-

stance, that the defendant company owned and operated and controlled the Southern Kansas Railway Company; that the deceased, Gibson, purchased a ticket from an agent of the defendant at Holliday, Kan., which entitled him to transportation on one of the trains of the Southern Kansas Railway Company to Olathe, Kan.; that after purchasing the ticket it become necessary for him to cross the tracks belonging to the defendant company, then being used by the defendant company and the Southern Kansas Railway Company; that while crossing the tracks, by reason of the carelessness and negligence of the defendant company, through its servants and employees, the deceased was run over and killed. The jury found that the deceased was a passenger on defendant's train, and that defendant had control, direction, and management of the Southern Kansas Railway Company, and owned a majority of the stock. Mr. Chief Justice Horton, in delivering the opinion, among other things, said:

"The jury found that the person in charge of the ticket office of the station of Holliday was agent both for the Atchison Company and the Southern Kansas Company; but even if the ticket agent at Holliday acted for the Atchison road, and the Atchison road sold the ticket for the Southern Kansas road, this did not make the Atchison road liable for the negligence of the Southern Kansas. The ticket purchased by Mr. Gibson shows that the contract of carriage was made on behalf of the Southern Kansas Railway Company. * * * They were two separate corporations, and the one is not responsible for the negligence of the other."

See, also, in support of this proposition, *Louisville, etc., Ry. Co. v. Treadway,* 142 Ind. 475, 40 N. E. 807; *Railroad Co. v. Griffin,* 100 Ind. 221, 50 Am. Rep. 783; *Railway Co. v. Barnhart,* 115 Ind. 408, 16 N. E. 121.

In view of the facts thus established by the evidence, did the court err in refusing to direct a verdict in defendant's favor? In *Solts v. S. W. Cotton Oil Co.,* 28 Okla. 706, 115 Pac. 776, the court, speaking through Mr. Chief Justice Turner, announces the rule in such cases as follows:

"The question presented to a trial court on a motion to direct a verdict is whether, admitting the truth of all the evidence

which has been given in favor of the party against whom the action is contemplated, together with such inferences and conclusions as may be reasonably drawn from it, there is enough competent evidence to reasonably sustain a verdict should the jury find in accordance therewith. Where the evidence is conflicting, and the court is asked to direct a verdict, all facts and inferences in conflict with the evidence against which the action is to be taken must be eliminated entirely from consideration and totally disregarded, leaving for consideration that evidence only which is favorable to the party against whom the motion is leveled."

Measured by this standard, we are forced to say that there was error in the ruling of the court in refusing to direct a verdict for defendant; for there was an utter lack and want of evidence to sustain any of the material issues in the case.

"Where a verdict for damages is found by a jury which is unsupported by any evidence, the same will be reversed and set aside on appeal." (*Denver W. & M. Co. v. Adkinson*, 28 Okla. 1, 119 Pac. 247.)

"Where there is entire lack of evidence to sustain any material issue found by a general verdict, such verdict will be set aside, and a new trial granted." (*Howard et al. v. Farrar*, 28 Okla. 490, 114 Pac. 695.)

Having arrived at this conclusion, it is unnecessary for us to consider the other questions raised by the petition in error. Whether or not plaintiff had a cause of action against some other party, we do not attempt to say. However, it is clear that none existed against this defendant. Certain allegations were made by him in his petition, yet, so far as defendant is concerned, none of them have been proven, and, as the burden was on him to establish them, it necessarily follows that the court erred in refusing to sustain the demurrer to the evidence, and also erred in refusing to direct a verdict in defendant's favor.

Entertaining this view of the case, it follows that no good result can be achieved by remanding it for a new trial. It therefore follows that the judgment of the district court of Hughes county should be reversed, and the cause dismissed.

By the Court: It is so ordered.

All the Justices concur.