EISENSCHMIDT v. CONWAY et al.

No. 31339. Dec. 19, 1944.

Rehearing Denied Jan. 30, 1945.

*155 P. 2d 241.*

G. C. Spillers and G. C. Spillers, Jr., both of Tulsa, for plaintiff in error.

C. H. Rosenstein, of Tulsa, for defendants in error.

ARNOLD, J. Action by H. C. Eisenschmidt, as plaintiff, against R. M. Conway and Lawrence Mills, as defendants. From an order and judgment sustaining a motion of defendants for a directed verdict, plaintiff appeals.

Plaintiff's petition in this case was based upon alleged fraud in the procurement from him by defendants of an assignment of a certain judgment held and owned by him, the facts leading up to this action being substantially as follows:

In 1926 John J. Black and wife executed three notes to the Exchange Trust Company, two of said notes being in the sum of $2,060 each and the third in the sum of $1,030. These notes were secured by a mortgage on certain real estate located in Tulsa, Okla. Thereafter one of the larger notes was assigned to the plaintiff herein and the other to S. Katherine Laubach. The $1,030 note was assigned to Miss Loughlin. Default in the payment of these notes resulted in an action of foreclosure of the mortgage securing same, and on a sale of the property under the foreclosure decree on July 15, 1935, the property brought the sum of $600 cash. Of this amount, after payment of costs, the plaintiff herein received $116.86 on his judgment.

In January, 1940, the mother of John J. Black died leaving an estate of approximately $141,000. By the terms of her will John J. Black was to receive one-fourth of said estate. In February of 1940 defendant Lawrence Mills was employed to take such proceedings as were necessary to enforce the judgment of Mrs. Laubach against the interest of John J. Black in his mother's estate. After investigation Mr. Mills determined that the judgment of Mrs. Laubach could be enforced against the interest of John J. Black in this estate, and upon the information thus obtained he began negotiations for procuring assignments to R. M. Conway of the judgment of Miss Loughlin and of the plaintiff. He procured an assignment from Miss Loughlin for the sum of $100 and from this plaintiff for the sum of $200.

This plaintiff was a resident of the State of California, and upon being contacted with reference to an assignment of his judgment to the defendant Mills, he directed that negotiations be conducted through his brother-in-law, E. E. Parsons, of Tulsa. After several conversations between Mills and Parsons, personally and by telephone, Mills made an offer of $200 for plaintiff's judgment, and prepared an assignment thereof to be forwarded by Parsons to plaintiff in California. Upon the execution and return of this assignment Parsons notified Mills that he had it and was ready to make delivery. He went to the office of Mills & Cohen for the purpose of making delivery of the assignment, and in the conversation at that time and before delivery of the assignment he asked Mills in substance and effect what had happened, if anything, that would make the Black judgment valuable. Mill's reply was, "Nothing that I know of." Parsons testified that he relied on this statement. Thereupon Parsons delivered the assignment to Mills and received $200 in cash therefor.

By the assignment thus procured Mills eventually received the sum of $3,100 from the executor of the Black estate in satisfaction of this judgment. In September, 1940, the plaintiff learned

of John J. Black's interest in the estate of his mother and that his interest was sufficient to cover these three deficiency judgments. This action was thereafter commenced, the petition of plaintiff stating substantially the facts as above outlined.

Defendants answered by general denial. Both parties introduced their evidence, and after the evidence was closed defendants moved for a directed verdict, which motion was sustained by the court, the case withdrawn from the jury and judgment entered in favor of defendants. Motion for new trial was overruled provoking this appeal.

Much documentary evidence and oral testimony was introduced upon the trial of the case, but the material evidence revolved around the conflict in the testimony of Parsons and Mills. Parsons testified positively to the statement · by Mills that nothing that he knew of had occurred in the financial status of John J. Black to make plaintiff's judgment valuable at the time of the assignment, while Mills, as positively, denied such statement. However, Mills did admit that before delivery of the assignment Parsons made some inquiry of him relating to John J. Black's solvency, and admitted that he knew what Parsons was driving at when he made the inquiry. This inquiry having been made by Parsons, and its purpose being understood by Mills, the latter was under the legal obligation, if he determined to discuss the matter, to truthfully impart such information as he had which would affect one way or the other the delivery of the assignment. As a lawyer Mills knew that delivery of the assignment was necessary in order for him to receive the proceeds of the judgment when collected from John J. Black's interest in his mother's estate. In 23 Am. Jur. 860, section 82 reads as follows:

"A party of whom inquiry is made concerning the facts involved in a transaction must not, according to well-settled principles, conceal or fail to disclose any pertinent or material information in replying thereto, else he will be chargeable with fraud. The reason for the rule is simple and precise. Where one responds to an inquiry, it is his duty to impart correct information. Thus, one who responds to an inquiry is guilty of fraud if he denies all knowledge of a fact which he knows to exist, if he gives equivocal, evasive, or misleading answers calculated to convey a false impression, even though literally true as far as they go, or if he fails to disclose the whole truth. The rule is frequently applied where inquiries are made as to the credit and solvency of a third person."

Defendant Conway is the father-in-law of defendant Mills, and it was admitted upon the trial by Mr. Mills that he used the name of his father-in-law in procuring the assignment of this judgment but that it was procured for his own personal use and benefit. While the evidence in this case was wide in range and covered many incidental matters, the important and material evidence in the case related to the conversation had between Parsons and Mills at the time of the delivery of the assignment, and, as before stated, the evidence as to these matters was in direct conflict. Under such circumstances the rule to be followed by trial courts, when a motion for a directed. verdict is presented, is thus stated in the case of Reynolds v. Brooks, 49 Okla. 188, 152 P. 411, in the body of the opinion, at page 193:

"Where the evidence is conflicting, and the court is asked to direct a verdict, or to render a judgment upon demurrer, all facts and inferences in conflict with the evidence against which the action is to be taken must be considered as untrue or withdrawn, and must be entirely eliminated from consideration and disregarded, leaving for consideration only that evidence which is favorable to the party against whom the demurrer or motion is directed; and if there appears to be sufficient evidence to support a verdict for the plaintiff, it is error to sustain a demurrer thereto or to direct a verdict for defendants. Jaffray v. Wolf, 4 Okla. 303, 47 P. 496; Edmisson v. Drumm-Flato Comm. Co., 13 Okla. 440, 73 P. 958; Ziska v. Ziska, 20 Okla. 634, 95 P. 254, 23 L.R.A. (N. S.) 1; Shawnee Light &

Power Co. v. Sears, 21 Okla. 13, 95 P. 449; Harris v. M., K. & T. Ry Co., 24 Okla. 341, 103 P. 758, 24 L.R.A. (N. S.) 858; Solts v. S. W. Cotton Oil Co., 28 Okla. 706, 115 P. 776; C., R. I. & P. Ry. Co. v. McCulley, 30 Okla. 178, 120 P. 279."

Applying this rule to the situation presented by the record in this case at the time the motion for a directed verdict was presented the trial court had before it the following facts: That the plaintiff was the owner of a judgment for $2,060 less a credit of $116.86 thereon; that defendant Mills from his investigation with reference to the Laubach judgment knew the approximate value of the judgment of plaintiff; that he first offered $100 for the assignment but finally increased the offer to $200; that neither the plaintiff nor his agent, Parsons, knew anything with reference to the estate of Mrs. Black or of John J. Black's interest therein; that Parsons made inquiry of defendant Mills before delivery of the assignment which Mills admits he knew was intended to elicit information as to the value of the judgment at that time; that Mills did not impart the information which he had with referance to the changed financial condition of John J. Black although he had full information concerning the same and knew that the inquiry of Parsons was directed thereto, but on the contrary stated that he knew of nothing affecting a change in his financial status.

It might have been reasonably inferred by the jury from all facts and circumstances in evidence that Mills, knowing the purpose of Parsons' inquiry, falsely made the above statement with the design and intentional purpose of misleading Parsons with reference to the true facts, and that he intentionally and for the same purpose refrained from giving him the facts; that Parsons relied on the statement of Mills, and believing that nothing had happened affecting the financial responsibility of Black, delivered the assignment.

This conflict in the evidence on the vital issue of fraud should have been resolved by the jury.

The order of the trial court sustaining defendants' motion for a directed verdict is considered to be erroneous, and the judgment based thereon is therefore reversed and the cause remanded for a new trial.

CORN, C.J., GIBSON, V.C.J., and OSBORN, HURST, and DAVISON, JJ., concur. RILEY and WELCH, JJ., dissent.